1
2
3
4
5          UNITED STATES DISTRICT COURT
6          NORTHERN DISTRICT OF CALIFORNIA
7
8    DAVID B. GRECU,                          No. C-07-0780 EMC
9               Petitioner,
                                              **SECOND ORDER DENYING**
10       v.                                   **RESPONDENT'S MOTION TO DISMISS**
11   M.S. EVANS, WARDEN,                      **(Docket No. 64)**
12              Respondent.
     _____/
13
14                    I.    **INTRODUCTION**
15          This case is before the Court on remand from the U.S. Court of Appeals for the Ninth
16   Circuit.  Respondent M.S. Evans, Warden of the Salinas Valley State Prison, has filed a renewed
17   Motion to Dismiss inmate Petitioner David B. Grecu's petition for a Writ of Habeas Corpus as
18   untimely under 28 U.S.C. § 2244(d), the statute of limitations established by the Antiterrorism and
19   Effective Death Penalty Act of 1996 ("AEDPA").  Resp.'s Mot. to Dismiss (Docket No. 64).  The
20   Court previously dismissed in part Respondent's motion by an order dated October 1, 2012.  *See*
21   Order Denying Respondent's Mot. to Dismiss (Docket No. 77).  In that Order, the Court held that
22   Petitioner was entitled to an evidentiary hearing on the issue of whether equitable tolling covers the
23   time period between the California Supreme Court's denial of his state habeas petition and his filing
24   of a habeas petition in federal court so as to render his habeas petition timely.  *Id*. at 14.  Petitioner
25   waived his right to an evidentiary hearing and requested instead that the Court decide this remaining
26   issue of equitable tolling on the parties' briefs and supporting declarations.  *See* Letter from Henry
27   C. Su (Docket No. 82).  Having considered the parties' briefs and accompanying submissions, the
28

Court finds that Petitioner Grecu is entitled to equitable tolling for the subject time period, and hereby **DENIES** the remainder of Respondent's Motion to Dismiss for the reasons discussed herein.

## II.   FACTUAL BACKGROUND

On February 3, 1992, Petitioner pled guilty, as part of a negotiated plea agreement, to six counts of residential burglary (Cal. Penal Code § 459) and one count of possession of cocaine (Cal. Health & Safety Code § 11350).  *See* Entry of Sentence (Docket No. 64-1, Ex. 1).  On March 30, 1992, he was sentenced to state prison for a term of ten years.  Execution of the sentence, however, was suspended and Petitioner was placed on probation for five years.  Petitioner's probation was revoked and subsequently reinstated both on November 30, 1994, and December 8, 1995.  Transcript of Proceedings, September 2, 2005 (Docket No. 64-1, Ex. 2-A) at 8:26-9:4.  On June 13, 1997, at a probation violation hearing, a California Superior Court found Mr. Grecu in violation of the terms of his probation and sentenced him to the previously suspended ten years.[1]  The California Court of Appeal affirmed his conviction on July 21, 1998, in an unpublished opinion.  On appeal, Mr. Grecu had argued that his sentence should have been vacated and the matter remanded to Superior Court because the "trial court was unaware of its authority to modify the previously suspended ten-year sentence to a lower term or to reinstate probation."  Transcript of Proceedings at 9:21-10:3. Petitioner's appeal did not raise the issue of ineffective assistance of counsel (a claim upon which the instant habeas petition is based), and, after his conviction was upheld, he did not seek review in the California Supreme Court.  *Id*. at 10:3-9.

Mr. Grecu then filed a petition for writ of habeas corpus in the California Superior Court for Santa Cruz County on August 23, 1999.  His state habeas petition argued that his conviction was invalid due to ineffective assistance of counsel, prosecutorial misconduct, and the entry of involuntary pleas.  Pet. for Writ of Hab. Corpus (Docket No. 1) ("Habeas Petition") ¶ 9(a)(I).  After a number of delays, including thirty continuances at the request of Mr. Grecu, the court held a hearing on the petition and denied it on September 2, 2005.  *See* Transcript of Proceedings at 13, 15;

---

[1]  Petitioner is currently serving a "Three Strikes" life sentence as well as a ten year determinate sentence for burglary in Mule Creek State Prison.  Decl. of David Grecu (Docket No. 1) ¶ 1; Letter RE Change of Address (Docket No. 7).

United States District Court

For the Northern District of California

1   Order Granting Mot. to Dismiss (Docket No. 22) at 2.  Thereafter, Petitioner filed a petition for writ

2   of habeas corpus alleging the same three grounds for relief on March 13, 2006, in the California

3   Court of Appeal.  The appellate court denied the petition on April 14, 2006.  Habeas Petition ¶

4   9(a)(II); Appellate Ct. Deny Order (Docket No. 1), Ex. Z at 2.  Petitioner then filed a petition for

5   writ of habeas corpus on the same grounds in the California Supreme Court on May 12, 2006.  On

6   January 17, 2007, that petition was also denied.  Habeas Petition ¶ 9(a)(III); Supreme Ct. Deny

7   Order (Docket No. 1), Ex. Z at 6.  He then filed the instant federal petition, which was signed on

8   January 31, 2007, and received by the federal district court on February 6, 2007.  As with his state

9   petition, Mr. Grecu's federal habeas petition alleges that his conviction is invalid due to ineffective

10  assistance of counsel, prosecutorial misconduct, and the entry of involuntary pleas.  *See* Habeas

11  Petition at 6.

### III.   PROCEDURAL BACKGROUND AND PRIOR FINDINGS

13          Approximately ten months after Petitioner lodged his habeas petition with this Court,

14  Respondent moved to dismiss the petition on timeliness grounds due to "the lapse of time between

15  the denial of state postconviction relief by the Supreme Court of California and the filing of Mr.

16  Grecu's federal habeas petition."  Memorandum Order Reversing and Remanding ("Memorandum

17  Order") (Docket No. 51) at 3.[2]  *See* First Mot. to Dismiss (Docket No. 14).  The district court

18  granted the motion, but not on the grounds argued by the State.  Rather, "the district court held that

19  Mr. Grecu was not entitled to statutory tolling under 28 U.S.C. § 2244(d)(2) during the pendency of

20  his state habeas petitions because his petition to the state appellate court had been untimely," which

21  likewise rendered his federal habeas petition untimely under the AEDPA.  *Id*. at 3.  *See also* Order

22  Granting Mot. to Dismiss at 4.  Petitioner filed a motion for reconsideration, stating that he could

23  explain the delay between the denial of his state superior court filing and his filing in the state

24  appellate court on account of his placement in administrative segregation and his consequent lack of

25  access to his court files.  *See* Motion for Reconsideration (Docket No. 28).  The district court denied

26  Petitioner's motion, finding that he had not established a basis for reconsideration under Fed. R. Civ.

27  _____

28          [2]  Although it is marked as "not for publication," this Memorandum Order is binding upon
this Court under the doctrine of law of the case.  *See* 9th Cir. R. 36-3(a).

United States District Court

For the Northern District of California

1  P. 60(b) and had not "provide[d] any extraordinary reason justifying relief."  Order Denying Mot.

2  for Reconsideration (Docket No. 39) at 2.  Petitioner appealed.

3        The Ninth Circuit Court of Appeals initially affirmed the district court's ruling, but on

4  rehearing, the court reversed and remanded the matter back to this Court.  Memorandum Order at 2.

5  The Ninth Circuit found that "the district court's dismissal of Mr. Grecu's petition [could] not be

6  squared with *Herbst v. Cook*," *id*. at 4, which held that "[a] habeas court must give a petitioner

7  notice of the procedural default and an opportunity to respond to the argument for dismissal," *Herbst*

8  *v. Cook*, 260 F.3d 1039, 1043 (9th Cir. 2001) (quoting *Boyd v. Thompson*, 147 F.3d 1124, 1128 (9th

9  Cir. 1998)).  Holding that "Mr. Grecu never had an adequate opportunity to respond to the argument

10 that formed the basis for the district court's judgment," the Ninth Circuit reversed the district court's

11 decision and remanded the matter "for further consideration of Mr. Grecu's claim that he was

12 entitled to statutory tolling during the pendency of his state habeas petitions."  Memorandum Order

13 at 5.

14       The Ninth Circuit's Memorandum Order instructed the district court on remand to "address

15 Mr. Grecu's equitable tolling argument with respect to the filing of his federal habeas petition" if it

16 were to conclude "that Mr. Grecu's state filings were timely."  Memorandum Order at 5.  It also

17 noted that "Mr. Grecu has made the necessary showing for a hearing on the issue of equitable

18 tolling," citing *Roy v. Lampert*, 465 F.3d 964 (9th Cir. 2006), for the proposition that "[a] habeas

19 petitioner . . . should receive an evidentiary hearing when he makes a good-faith allegation that

20 would, if true, entitle him to equitable tolling."  *Id*. at 6 (quoting *Roy*, 465 F.3d at 969).  *See also id*.

21 at 7 ("In sum, Mr. Grecu has alleged facts that, if established, may entitle him to equitable tolling of

22 the time period after the state supreme court's denial of his state petition.").

23       Following remand, Respondent filed a renewed motion to dismiss, arguing that Mr. Grecu's

24 federal habeas petition ought to be dismissed as untimely under the § 2244(d) of the AEDPA.  *See*

25 Resp.'s Mot. to Dismiss.  Respondent's motion argues that Petitioner is neither entitled to statutory

26 tolling for the time elapsed while his state habeas petitions were pending in the state courts, nor to

27 equitable tolling for the period between the California Supreme Court's denial of his state habeas

28 petition and his filing of a habeas petition in federal court.  This Court denied Respondent's motion

United States District Court

For the Northern District of California

1  in part, holding that Mr. Grecu's habeas petition was properly filed at the time it was first reviewed

2  by the Santa Cruz Superior Court, and remained pending until the State of California completed a

3  full round of collateral review with the denial of Mr. Grecu's petition by the California Supreme

4  Court on January 17, 2007, and thus Petitioner was entitled to statutory tolling under 28 U.S.C. §

5  2244(d)(2).[3]  *See* Order Denying Respondent's Mot. to Dismiss at 9, 11.  The Court deferred ruling

6  on Petitioner's claim to equitable tolling for the period between the California Supreme Court's

7  denial of his state habeas petition and his filing of a habeas petition in federal court, holding instead

8  that Petitioner was entitled to an evidentiary hearing on the issue of whether equitable tolling covers

9  this time period so as to render his habeas petition timely.  *Id*. at 14.  Petitioner waived his right to

10  an evidentiary hearing through counsel by a letter dated November 8, 2012, and requested that the

11  Court decide this remaining issue of equitable tolling on the parties' briefs and supporting

12  declarations.  *See* Letter from Henry C. Su.[4]  Thus, the only matter that remains undecided is

13  whether Petitioner is entitled to equitable tolling.

14                                    **IV.   DISCUSSION**

15  A.      Writ of Habeas Corpus

16          This Court may entertain a petition for writ of habeas corpus on "behalf of a person in

17  custody pursuant to the judgment of a State court only on the ground that he is in custody in

18  violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a); *Rose v.*

19  *Hodges*, 423 U.S. 19, 21 (1975).  A district court shall "award the writ or issue an order directing the

20

21          [3]  Section 2244(d)(2) provides,

22              "[t]he time during which a properly filed application for State post-
23              conviction or other collateral review with respect to the pertinent
                judgment or claim is pending shall not be counted toward any period
24              of limitation under this subsection."

25  28 U.S.C. § 2244(d)(2).

26          [4]  Prior to waiving his right to an evidentiary hearing, Petitioner indicated "that it may be
    possible for the Court to take in the evidence relevant to the equitable tolling claim through
27  declarations submitted with the motion papers in lieu of an evidentiary hearing with live testimony,"
    in part because the "putative witnesses have [already] submitted declarations, the contents of which
    do not appear to be disputed or to be in conflict with one another."  Parties' Joint Status Conference
28  Statement (Docket No. 78) at 2.

United States District Court

For the Northern District of California

1  respondent to show cause why the writ should not be granted, unless it appears from the application

2  that the applicant or person detained is not entitled thereto." 28 U.S.C. § 2243.  Under Rule 4 of the

3  Rules Governing Section 2254 Cases In The United States District Courts, a district court may also

4  order the respondent to file another pleading where neither summary dismissal nor service is

5  appropriate.  *See* Rules Governing § 2254 Cases, Rule 4, 28 U.S.C. following § 2254 ("If the

6  petition is not dismissed, the judge must order the respondent to file an answer, motion, or other

7  response within a fixed time, or to take other action the judge may order.").

8  B.       Statute of Limitations

9          The AEDPA created a statute of limitations on petitions for writs of habeas corpus filed by

10  state prisoners.  Petitions filed by prisoners challenging non-capital state convictions or sentences

11  must be filed within one year of the latest of the date on which: (1) the judgment became final after

12  the conclusion of direct review or the time passed for seeking direct review; (2) an impediment to

13  filing an application created by unconstitutional state action was removed, if such action prevented

14  petitioner from filing; (3) the constitutional right asserted was recognized by the Supreme Court, if

15  the right was newly recognized by the Supreme Court and made retroactive to cases on collateral

16  review; or (4) the factual predicate of the claim could have been discovered through the exercise of

17  due diligence.  *See* 28 U.S.C. § 2244(d)(1).   Any time elapsed during which a properly filed

18  application for state post-conviction or other collateral review is pending is excluded from §

19  2244(d)(1)'s one-year time limit.  *See* 28 U.S.C. § 2244(d)(2).

20         It is uncontested that the one-year statute of limitations in this matter commenced on August

21  31, 1998, 40 days after the California Court of Appeal filed its opinion denying Petitioner's direct

22  appeal of his conviction.  *See* Cal. Rules of Court Rule 8.366(b)(1) (providing that Court of Appeal

23  decisions in criminal appeals become final 30 days after filing), and Rule 8.500(e)(1) (requiring that

24  petitions for review to the California Supreme Court be filed within 10 days after the Court of

25  Appeal decision becomes final).  *See also Smith v. Duncan*, 297 F.3d 809, 812-13 (9th Cir. 2002),

26  *overruled on other grounds by Pace v. DiGuglielmo*, 544 U.S. 408 (2005) ("AEDPA's limitation

27  period began to run from the date [petitioner's] judgment of conviction became final, based on the

28  expiration of the time for seeking direct review from the California Court of Appeal.  Under

United States District Court

For the Northern District of California

1    California law, [petitioner's] conviction became final . . . forty (40) days after the California Court

2    of Appeal filed its opinion.").  Petitioner filed his writ of habeas corpus in the California Superior

3    Court for the County of Santa Cruz on August 23, 1999 – eight days prior to the expiration of the

4    limitations period.  Although Petitioner did not file his federal habeas petition until February 6,

5    2007, almost seven years later (*see* Habeas Petition (Docket No. 1)), this Court has already held that

6    the limitations period was statutorily tolled under 28 U.S.C. § 2244(d)(2) from the time his writ was

7    filed with the Superior Court on August 23, 1999, until it was denied on appeal by the California

8    Supreme Court on January 17, 2007.[5]  *See* Order Denying Respondent's Mot. to Dismiss at 9, 11.

9          The statute of limitations began to run once again on January 18, 2007, and expired eight

10   days later on January 26, 2007.  Mr. Grecu did not file his habeas petition in federal court until

11   February 6, 2007, twelve days after the limitations period had run.  Absent further equitable tolling

12   of the statute of limitations, Petitioner's federal habeas corpus petition is untimely under the

13   AEDPA.[6]

14   C.    Equitable Tolling

15         Federal courts recognize that the AEDPA statute of limitations may be equitably tolled in

16   certain circumstances.  *Holland v. Florida*, 130 S. Ct. 2549, 2554 (2010) ("We here decide that the

17   timeliness provision in the federal habeas corpus statute is subject to equitable tolling."); *id.* at 2560

18   ("like all 11 Courts of Appeals that have considered the question, we hold that § 2244(d) is subject

19   to equitable tolling in appropriate cases").  In the Ninth Circuit, equitable tolling has been found

20   warranted where a delay in filing a habeas petition by a Spanish-speaking inmate was attributable to

21   a lack of access to Spanish-language legal materials and an inability to obtain translation assistance.

22   *See Mendoza v. Carey*, 449 F.3d 1065 (9th Cir. 2006).  Equitable tolling has also been found

23   appropriate for periods during which a habeas petitioner was housed in administrative segregation

24

25         [5]  The California Supreme Court's denial of a petition for habeas relief is final upon filing.
     *See* Cal. Rules of Court rule 8.532(b)(2)(C); *Phelps v. Alameda*, 366 F.3d 722, 724 n.1 (9th Cir.
26   2004).

27         [6]  Both parties concede that Petitioner's federal habeas corpus petition was filed twelve days
     after the expiration of the statute of limitations.  *See* Petitioner's Brief on Equitable Tolling (Docket
28   No. 83) at 4; Respondent's Brief on Equitable Tolling (Docket No. 84) at 1.

1    and denied access to his legal materials, recognizing that it was "unrealistic to expect [a habeas

2    petitioner] to prepare and file a meaningful petition on his own within the limitations period without

3    access to his legal file." *Espinoza-Matthews v. California*, 432 F.3d 1021, 1027 (9th Cir. 2005)

4    (internal citation omitted).

5        "[A] litigant seeking equitable tolling [of the one-year AEDPA limitations period] bears the

6    burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that

7    some extraordinary circumstance stood in his way." *Holland v. Florida*, 130 S. Ct. at 2562 (quoting

8    *Pace v. DiGuglielmo*, 125 S.Ct. at 1814). "[T]he threshold necessary to trigger equitable tolling

9    under [the] AEDPA is very high, lest the exceptions swallow the rule." *Miranda v. Castro*, 292 F.3d

10   1063, 1066 (9th Cir. 2002) (internal citations and quotation marks omitted). This high standard

11   effectuates the "AEDPA's statutory purpose of encouraging prompt filings in federal court in order

12   to protect the federal system from being forced to hear stale claims." *Guillory v. Roe*, 329 F.3d

13   1015, 1018 (9th Cir. 2003) (internal citations and quotation marks omitted). However, "[w]hen

14   considering whether to apply equitable tolling, the Supreme Court has emphasized the need for

15   'flexibility' and for 'avoiding mechanical rules.'" *Nedds v. Calderon*, 678 F.3d 777, 780 (9th Cir.

16   2012) (quoting *Holland*, 130 S.Ct. at 2563). "A court reviewing a habeas petition should adhere to

17   'a tradition in which courts of equity have sought to relieve hardships which, from time to time, arise

18   from a hard and fast adherence to more absolute legal rules, which, if strictly applied, threaten the

19   evils of archaic rigidity.'" *Nedds*, 678 F.3d at 780  (quoting *Holland,* 130 S.Ct. at 2563). Equitable

20   tolling determinations are thus "highly fact-dependent." *Whalem/Hunt v. Early*, 233 F.3d 1146,

21   1148 (9th Cir. 2000) (en banc) (per curiam). *See also Lott v. Mueller*, 304 F.3d 918, 923 (9th Cir.

22   2002) (equitable tolling determinations "turn[ ] on an examination of detailed facts"); *Nedds*, 678

23   F.3d at 780 ("The grounds for granting equitable tolling are 'highly fact-dependent.'") (quoting

24   *Laws v. Lamarque,* 351 F.3d 919, 922 (9th Cir. 2003)). "[C]ourts of equity can and do draw upon

25   decisions made in other similar cases for guidance . . . but with awareness of the fact that specific

26   circumstances, often hard to predict in advance, could warrant special treatment in an appropriate

27   case." *Holland v. Florida*, 130 S. Ct. at 2563.

28

United States District Court

For the Northern District of California

1    The parties disagree over whether Petitioner is entitled to equitable tolling which would

2    preserve the timeliness of his federal habeas petition.  Petitioner argues that his placement in

3    administrative segregation for the months leading up to the expiration of the statute of limitations

4    entitles him to equitable tolling.  *See* Petitioner's Brief on Equitable Tolling ("Petitioner's Brief")

5    (Docket No. 83) at 8 ("Although his petition was therefore twelve days late, Mr. Grecu is entitled to

6    equitable tolling for the slightly late filing because, as this Brief explains, he has established both

7    diligence and extraordinary circumstance in this case.").  Respondent, in opposition, contends that

8    Mr. Grecu may not avail himself of equitable tolling because he was neither diligent in pursuing his

9    case, nor can his delay in filing be attributed to extraordinary circumstance.  *See* Respondent's Brief

10   on Equitable Tolling ("Respondent's Brief") (Docket No. 84) at 4, 6.

11       1.    Legal Standard

12   Following the Ninth Circuit's instruction on remand, this Court ordered an evidentiary

13   hearing "to determine if Petitioner is entitled to equitable tolling for the period between the

14   California Supreme Court's denial [of his state petition] and the filing of the federal petition."  Order

15   Denying Respondent's Mot. to Dismiss at 14.  "In habeas proceedings, an evidentiary hearing is

16   required when the petitioner's allegations, if proven, would establish the right to relief."  *Totten v.*

17   *Merkle*, 137 F.3d 1172, 1176 (9th Cir. 1998).  To succeed on his claim to equitable tolling, Mr.

18   Grecu must show by a preponderance of the evidence that he "has been pursuing his rights

19   diligently," and that "some extraordinary circumstance stood in his way."  *Holland v. Florida*, 130

20   S. Ct. at 2562.  *See Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002) (In federal habeas corpus

21   proceedings, "it is the petitioner's burden to prove his custody is in violation of the Constitution,

22   laws or treaties of the United States," and "[t]his burden of proof must be carried by a

23   preponderance of the evidence.") (quoting *Snook v. Wood*, 89 F.3d 605, 609 (9th Cir. 1996) and

24   *McKenzie v. McCormick*, 27 F.3d 1415, 1419 (9th Cir. 1994)).  *See also Sumner v. Mata*, 449 U.S.

25   539, 551 (1981) (Unless otherwise provided by statute, the "usual [civil] 'preponderance of the

26   evidence' standard" applies in a habeas corpus proceeding, and "the burden shall rest on the habeas

27   petitioner.").  As noted, Petitioner waived his right to an evidentiary hearing and requested that the

28

United States District Court

For the Northern District of California

1    Court decide this remaining issue of equitable tolling on the basis of the parties' briefs and

2    supporting declarations. *See* Letter from Henry C. Su.

3           2.      Extraordinary Circumstance

4           As a threshold matter, a petitioner must show that "some extraordinary circumstance stood in

5    his way" to prevent the timely filing of a habeas petition in order to receive equitable tolling.

6    *Holland*, 130 S. Ct. at 2562.  The extraordinary circumstance must be "beyond a prisoner's control

7    [and] make it impossible to file a petition on time." *Espinoza-Matthews*, 432 F.3d at 1026 (quoting

8    *Spitsyn v. Moore*, 345 F.3d 799 (9th Cir. 2003)) (internal quotation marks and citations omitted); *but*

9    *see Espinoza-Matthews*, 432 F.3d at 1026 n.5 (acknowledging potential abrogation of "impossible to

10   file" standard).

11          Mr. Grecu argues that his placement in the administrative segregation unit at Salinas Valley

12   State Prison on November 8, 2006, up to and through the expiration of the AEDPA statute of

13   limitations on January 26, 2007, constitutes an "extraordinary circumstance" warranting equitable

14   tolling.  Petitioner's Brief at 4-5, 12-16.  The uncontested evidence submitted by Petitioner indicates

15   that he was placed in administrative segregation for "[b]attery on inmate," was "found guilty" of

16   battery by the Prison's Institutional Classification Committee (ICC), and was sentenced to a three

17   month term in the administrative segregation unit.[7]  Declaration of David Grecu ("First Grecu

18   Declaration") (Docket No. 67), Ex. B at 1.  The ICC's record of its proceedings indicates that

19   Petitioner was to be released from administrative segregation on January 17, 2007 – coincidentally,

20   the same day that the California Supreme Court denied his habeas petition – but, due to "enemy

21   concerns" and the presence of a "documented confidential enemy," Petitioner remained in

22   administrative segregation for the remainder of his housing at Salinas Valley State Prison until his

23   transfer to Mule Creek State Prison around March of 2007.  *Id.*; *see also* Petitioner's Letter RE

24   Change of Address (Docket No. 7).  The ICC record also indicates that "[a] review of subject's

25   Central file does not reflect a pervasive pattern of violence or predatory behavior toward cellmates,"

26

27          [7]  Regarding this battery charge, Mr. Grecu states, "I was violently assaulted, I was forced to
     defend myself."  First Grecu Declaration at 2.  The ICC record does not indicate whether Petitioner
28   acted in self defense.

**United States District Court**
For the Northern District of California

but that the Committee "elect[ed] not to Mitigate" Petitioner's sentence "due to disciplinary history."[8]  First Grecu Declaration, Ex. B at 1.  While in administrative segregation, Petitioner states that he was denied access to his legal files.  First Grecu Declaration, Ex. B at 2 ("for seven (7) months I was denied access to all my legal work"); *id*. at 3 ("for the 7 months I was confined to [administrative segregation] prison staff was refusing to provide me my legal work").  Respondent does not dispute this fact.

The Ninth Circuit has repeatedly found that lack of access to one's legal files may constitute an extraordinary circumstance entitling a habeas petitioner to equitable tolling.  *See Spitsyn v. Moore*, 345 F.3d 796 (equitable tolling appropriate when a prisoner could not timely access legal files in possession of his attorney to prepare a *pro se* habeas petition); *Espinoza-Matthews*, 432 F.3d at 1028 (equitable tolling appropriate where prisoner in administrative segregation was denied access to legal files for eleven months and, following release from administrative segregation, "had only slightly over a month with his legal file to try to prepare a proper petition."); *Lott v. Mueller*, 304 F.3d 918 (equitable tolling may be warranted where petitioner was denied access to the legal files related to his federal habeas petition for eighty-two days).  Indeed, in the Memorandum Order remanding Petitioner's case to this Court, the Ninth Circuit specifically noted that "placement in administrative segregation" as alleged by the Petitioner "may constitute an extraordinary circumstance for purposes of equitable tolling."  Memorandum Order at 6 (citing *Espinoza-Matthews*, 432 F.3d 1021).  "[W]ithout access to his legal file," it is "unrealistic to expect a habeas petitioner to prepare and file a meaningful petition on his own within the limitations period."  *Espinoza-Matthews*, 432 F.3d at 1027 (citation and quotation marks omitted).

"[E]ven where a petitioner had access to his legal files on the days before his AEDPA limitations period expired, . . . earlier events may have so disabled him as to make a timely filing impossible."  *Id*., 432 F.3d at 1028 n.8 (citation and quotation marks omitted).  Further, any period of confinement in administrative segregation "makes compliance with procedural deadlines difficult

---

[8]  A separate section of the ICC record indicates that Petitioner's disciplinary history includes, among other things, mutual combat, behavior which could lead to violence, refusal to obey orders, threatening staff, threatening crime, disruptive behavior, disobeying orders, conduct that may lead to violence, jumping a fence, and altering a weight card.  First Grecu Declaration, Ex. B at 1.

because of restrictions on [a] prisoner's ability to monitor [a] lawsuit's progress," particularly when that confinement immediately precedes a critical litigation deadline. *Rand v. Rowland*, 154 F.3d 952, 958 (9th Cir. 1998) (quoting *Houston v. Lack*, 487 U.S. 266, 270-71 (1988)).

Petitioner alleges that the delay in filing his federal habeas petition was on account of his placement in administrative segregation without access to his legal files. The Court finds that the evidence before it proves the truth of this allegation by a preponderance of the evidence. Following Ninth Circuit precedent, the Court finds that this lack of access to legal materials sufficiently impaired Mr. Grecu's ability to timely file his habeas petition so as to entitle him to equitable tolling.

Respondent contests Mr. Grecu's claimed lack of access to his legal files during this period by noting statements in his declaration where Petitioner admits to receiving mail while in administrative segregation. Respondent's Motion at 8. *See* First Grecu Declaration at 2 ("On December 01' 2006, I received Salinas Valley-SP, re-route mail it was 2 weeks late, it was a letter from my attorney dated November 14' 2006 . . . I immediately wrote my lawyer and asked him to place the date on my habeas declaration and to file it as soon as the California Supreme Court [ruled]"). The fact that Petitioner apparently received one piece of mail and may have been able to dispatch a reply letter is not, in the Court's view, sufficient to show that Mr. Grecu had such a level of access to his legal files so as to "prepare and file a meaningful petition on his own within the limitations period." *Espinoza-Matthews*, 432 F.3d at 1027. The record shows, as Respondent acknowledges, that "petitioner mailed his signed [habeas] petition to [his friend] Couenhoven one week *before* he was placed in administrative segregation." Respondent's Brief at 8 (emphasis in original). Petitioner alleges, and Respondent does not dispute, that Couenhoven "took possession of my already prepared federal U.S. Northern District habeas petition" and that Couenhoven maintained "total control of my Federal habeas Corpus Petition and separate volume of Exhibits." First Grecu Declaration at 3. Under these circumstances, the Court agrees that Mr. Grecu "was dependent on . . . Couenhoven[] to properly file [his] legal documents" while he was confined in administrative segregation. *Id.* Absent some showing by Respondent that Petitioner was able to

United States District Court
For the Northern District of California

12

United States District Court

For the Northern District of California

1  make a copy of that petition, Petitioner's subsequent placement in administrative segregation

2  materially deprived him of access to what was apparently the only copy of his habeas petition.

3       Petitioner has proven by a preponderance of the evidence that his placement in

4  administrative segregation and lack of meaningful access to his legal materials, including the draft of

5  his habeas petition, rises to the level of an "extraordinary circumstance" entitling him to equitable

6  tolling. *See Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000) ("And a person is plainly

7  'prevented' from filing a pleading for some period of time if he is deprived of the sole copy of that

8  pleading, something that the petitioner asserts happened to him here."). Petitioner generally asserts

9  that he was "denied access to all my legal work" (First Grecu Declaration at 2, 3); the state does not

10  argue that Grecu had the ability to use a prison law library or access other relevant materials.

11       Respondent also argues that Mr. Grecu "cannot rely on his placement in [administrative

12  segregation" as grounds for equitable tolling since he is the one who "caused his placement [there]."

13  Respondent's Brief at 5. Respondent disputes Petitioner's claim that he acted in self-defense during

14  the November 8, 2006, altercation by highlighting the fact that the ICC found him guilty of battery,

15  and the fact that the ICC record suggests Mr. Grecu has an "extensive disciplinary history." *Id*. at 6.

16  *See* First Grecu Declaration, Ex. B at 1 (ICC Record). The ICC record is not detailed enough to

17  conclude whether Petitioner instigated the altercation that led to his placement in segregated

18  housing, or whether he acted in self defense as he claims. However, even if Mr. Grecu was

19  responsible for his initial placement in administrative segregation, the record reflects, and

20  Respondent does not dispute, that for the period after January 7, 2007 – the day on which the Mr.

21  Grecu's AEDPA statute of limitations once again began to run – Petitioner was retained in

22  administrative segregation *for his own protection*. *See* First Grecu Declaration, Ex. B at 1 ("ICC

23  notes that the inmate [minimum eligible release date] expires on 1-17-07, in which it now creates an

24  enemy concerns . . . ICC elects to retain in [administrative segregation unit]"). The Ninth Circuit

25  has held that when a petitioner who is deprived of access to his legal materials is unable to timely

26  file a habeas petition because he is being held in administrative segregation for his own protection,

27  such deprivation is an "extraordinary circumstance" for equitable tolling purposes. *See e.g.*

28  *Espinoza-Matthews*, 432 F.3d 1021 (equitable tolling warranted for petitioner placed in

United States District Court

For the Northern District of California

1   administrative segregation for his own protection who was denied access to his legal files).  Thus,

2   for the critical eight days remaining in Petitioner's AEDPA limitations period after the California

3   Supreme Court issued its final decision, Mr. Grecu was held without access to his legal materials for

4   his own protection.  Respondent fails to demonstrate that Petitioner is not entitled to equitable

5   tolling for these reasons.

6          3.      Diligence

7          To receive equitable tolling, a petitioner must also show that "he has been pursuing his rights

8   diligently."  *Holland*, 130 S. Ct. at 2562.  "The diligence required for equitable tolling purposes is

9   reasonable diligence, not maximum feasible diligence."  *Id*. at 2565 (internal citations and quotation

10  marks omitted).  Generally, "[w]hen external forces, rather than a petitioner's lack of diligence,

11  account for the failure to file a timely claim, equitable tolling may be appropriate."  *Lott v. Mueller*,

12  304 F.3d at 922.  However, "if the person seeking equitable tolling has not exercised reasonable

13  diligence in attempting to file, after the extraordinary circumstances began, the link of causation

14  between the extraordinary circumstances and the failure to file is broken."  *Spitsyn v. Moore*, 345

15  F.3d at 802 (quoting *Valverde v. Stinson*, 224 F.3d at 134).

16         The uncontested evidence submitted by Petitioner indicates that on November 1, 2006, one

17  week before his altercation with another prisoner that led to his placement in administrative

18  segregation, Mr. Grecu sent a signed but undated copy of his federal habeas petition to Paul

19  Couenhoven, a staff attorney with the Sixth District Appellate Program, for a quick review.  First

20  Grecu Declaration at 2; *id*., Ex. A at 1 (Letter from Couenhoven expressing willingness to "spend

21  fifteen minutes" reviewing the petition).  After his placement in administrative segregation on

22  November 9, 2006,  Petitioner contacted Mr. Couenhoven and requested that he file the habeas

23  petition "as soon as the California Supreme Court decides/denies [the] pending habeas petition."

24  First Grecu Declaration at 2.  *See also* Declaration of Paul Couenhoven ("Couenhoven Declaration")

25  (Docket No. 69) ¶¶ 8-10.  In reply, Mr. Couenhoven stated "I can certainly file the petition for you,"

26  but declined to "'thumb through' the exhibits" or do any substantive work on the petition.  First

27  Grecu Declaration, Ex. A at 2 (Letter from Couenhoven stating, *inter alia,* "I will not retype

28  anything, and I will not rip out exhibits.  I do not have the time to redo your habeas petition.").

United States District Court

For the Northern District of California

1    Despite an apparent earlier request from the Petitioner for a legal opinion regarding the timeliness of

2    his petition, this letter from Mr. Couenhoven offers no legal advice on the timeliness of Mr. Grecu's

3    petition.  *See id.*  On January 30, 2007, five days after the AEDPA statute of limitations had run, Mr.

4    Couenhoven wrote to Petitioner indicating that he had paid the filing fee and mailed Mr. Grecu's

5    petition to this Court, and provided Petitioner with a copy of the California Supreme Court's order

6    denying his state habeas petition.  First Grecu Declaration, Ex. A at 4.  Couenhoven's letter also

7    advises Petitioner on how to request that this Court appoint an attorney to assist him during the

8    pendency of his habeas petition.  *Id*.  Mr. Grecu's federal habeas petition was not received by the

9    Court until February 6, 2007, 12 days after the statute of limitations had run.

10       Petitioner argues that he satisfied the diligence requirement for showing entitlement to

11   equitable tolling by preparing a draft of his federal habeas petition in advance of the California

12   Supreme Court's ruling on his state petition, and by enlisting the help of "his friend, Mr.

13   Couenhoven" to "look over the draft."  Petitioner's Brief at 9.  Upon losing access to his legal files

14   with his placement in administrative segregation, Mr. Grecu arranged for Mr. Couenhoven to file the

15   draft petition in his possession as soon as the California Supreme Court made its ruling.  *Id*. at 10.

16   Petitioner argues that these acts show Mr. Grecu acted with reasonable diligence under the

17   circumstances to comply with AEDPA's statute of limitations.

18       The Court is cognizant of the fact that Petitioner was unrepresented by counsel at the time he

19   filed his federal habeas petition (discussed *infra*).  Recent Ninth Circuit decisions "reaffirm the clear

20   principle that, even though *pro se* status alone is not enough to warrant equitable tolling, it informs

21   and colors the lens through which we view the filings, and whether these filings made sufficient

22   allegations of diligence."  *Roy v. Lampert*, 465 F.3d at 970 (citing *Balistreri v. Pacifica Police

23   Dep't,* 901 F.2d 696, 699 (9th Cir. 1990) ("This court recognizes that it has a duty to ensure that *pro

24   se* litigators do not lose their right to a hearing on the merits of their claim due to ignorance of

25   technical procedural requirements.")).  Bearing Petitioner's *pro se* status in mind, the Court finds

26   that Mr. Grecu acted with reasonable diligence in preparing his federal habeas petition.  Aware of

27   the possibility that the California Supreme Court could issue its ruling on his state habeas petition at

28   any time, Petitioner prepared an advance draft of his federal petition and sent it to his friend, Mr.

United States District Court

For the Northern District of California

1   Couenhoven, for a cursory review.  When he lost access to his legal files, he contacted his friend and

2   asked him to submit the draft petition as soon as the California Supreme Court issued its decision.

3   These acts are enough to satisfy the "reasonable diligence" standard articulated by the U.S. Supreme

4   Court in *Holland*.  To hold otherwise would impose upon a *pro se* petitioner an unreasonably high

5   burden, especially given that this petitioner's sole copy of the habeas petition was in the possession

6   of another person, and his legal files were inaccessible.  Under the circumstances, it was reasonable

7   for Petitioner to rely on Mr. Couenhoven to mail the petition as soon as the California Supreme

8   Court ruling was issued.  Indeed, enlisting the help of Mr. Couenhoven arguably resulted in the

9   federal petition being filed much earlier than would have been the case had Mr. Grecu been left to

10   do it on his own, since he was not released from administrative segregation and did not regain access

11   to his legal files until several months after Mr. Couenhoven mailed the petition on January 30, 2007.

12        Respondent counters that this Court's diligence examination "does not pertain solely to the

13   filing of the federal habeas petition, but [extends to] the time period that petitioner is exhausting

14   state court remedies as well."  Respondent's Brief at 2 (citing *Roy v. Lampert*, 465 F.3d at 969).

15   Respondent argues that "Petitioner waited over seven years after his guilty plea and placement on

16   probation to file his first state court habeas petition challenging the validity of his plea."

17   Respondent's Brief at 4.  Acknowledging that "[h]e was not incarcerated for most of that period,"

18   Respondent contends nonetheless that "[t]he fact that petitioner had only eight days after the

19   California Supreme Court's denial of his state habeas petition in which to file his federal petition is

20   attributable solely to petitioner's prior failure to exercise diligence."  Respondent's Brief at 4.

21        Respondent's argument is insufficient to rebut Petitioner's showing of diligence for three

22   reasons.  First, for a substantial portion of this period, the challenge to the suspended sentence was

23   in essence premature; he was not affected by the sentence until probation was revoked in 1997.

24   Respondent cites no authority from this Circuit or any other suggesting that a habeas petitioner fails

25   to act diligently when he chooses not to challenge a suspended sentence on *direct appeal* until

26   probation is revoked and he faces incarceration on the previously suspended sentence.  *Cf. Pace v.*

27   *DiGuglielmo*, 544 U.S. at 419 (denying equitable tolling, in part, because "petitioner [sat] on his

28   rights for years" before filing for state post-conviction review); *Bryant v. Arizona Atty. Gen.*, 499

United States District Court

For the Northern District of California

1   F.3d 1056, 1061 (9th Cir. 2007) (denying equitable tolling, in part, because petitioner "made no

2   effort to seek relief between the denial of his last [state post-conviction review] petition in October

3   1994 and the filing of the motion to recall the mandate in March 2000").

4        Second, Petitioner did timely file his petition with the Superior Court once his conviction

5   became final on direct appeal; and as this Court found, he pursued that petition through the state

6   courts in a timely fashion.

7        Third, the Ninth Circuit has repeatedly held that "'[t]he person seeking equitable tolling

8   [must demonstrate] reasonable diligence in attempting to file ... *after* the extraordinary

9   circumstances began.'" *Roy*, 465 F.3d at 971 (quoting *Spitsyn*, 345 F.3d at 802) (emphasis in

10  original).  Here, the extraordinary circumstance claimed by Mr. Grecu was his placement in

11  administrative segregation, and his consequent lack of access to his legal files.  This "circumstance"

12  did not come into being until November 8, 2006 while his petition was pending before the California

13  Supreme Court.  Thus, as Petitioner argues, "the diligence inquiry in this case properly focuses on

14  the twelve-day delay in filing the federal petition" after the California Supreme Court denied the

15  petition.  Petitioner's Brief at 11.  While the Ninth Circuit has also considered important the fact that

16  a habeas petitioner pursued his or her claim "within a reasonable period of time *before* the external

17  impediment . . . came into existence," *Roy*, 465 F.3d at 972, Respondent has failed to demonstrate

18  that Petitioner did not act timely before the external impediment occurred in his case.  Nor has

19  Respondent cited a single authority holding that filing a habeas petition only *eight days* before the

20  expiration of the AEDPA statute of limitations amounts to a failure to diligently pursue one's claim.

21  *Cf. Miller v. Marr*, 141 F.3d 976, 978 (10th Cir. 1998) (no finding of diligence where petitioner

22  waited *more* than a year before the extraordinary circumstance came into being) (cited by *Roy*, 465

23  F.3d at 972) (emphasis added); *LaCava v. Kyler*, 398 F.3d 271, 272 (3d Cir. 2005) (no finding of

24  diligence where petitioner waited twenty-one months before the extraordinary circumstance arose)

25  (cited by *Roy*, 465 F.3d at 972).

26       In sum, the conditions giving rise to Petitioner's claim of extraordinary circumstance

27  occurred *prior* to the expiration of the AEDPA statute of limitations.  By producing uncontroverted

28  evidence that Petitioner took reasonable steps to file his federal habeas petition before the statute of

**United States District Court**
For the Northern District of California

1  limitation expired, Mr. Grecu has shown that he was diligent in pursuing his claim.  *See Roy*, 465

2  F.3d at 973 ("By alleging what they did to pursue their claims and complain about their situations,

3  *and alleging that they did so before AEDPA's statute of limitations expired*, Roy and Kephart have

4  done enough to demonstrate that they were not the cause of their tardiness, and that they would have

5  filed on time but for their transfer to Arizona.") (emphasis added).

6        4.    <u>Attorney Negligence</u>

7        Respondent argues that equitable tolling should not be afforded Petitioner in this matter

8  because Paul Couenhoven, serving as Mr. Grecu's attorney and not as a mere friend, was negligent

9  in filing his client's federal habeas petition on time.  *See* Respondent's Brief at 3 ("Negligence on

10 the part of a prisoner's post conviction attorney does not qualify as cause" for equitable tolling.)

11 (citation and quotation marks omitted).  As a general matter, equitable tolling is unavailable when an

12 attorney's negligent conduct causes a client's habeas petition to be filed late, such as when the

13 attorney "forget[s] to file the habeas petition on time, mail[s] the petition to the wrong address, or

14 fail[s] to do the requisite research to determine the applicable deadline."  *Holland*, 130 S. Ct. at 2567

15 (Alito, J. concurring).  "Cause for a procedural default exists where something *external* to the

16 petitioner, something that cannot fairly be attributed to him, impeded his efforts to comply" with a

17 procedural rule like the AEDPA's statute of limitations.  *Maples v. Thomas*, 132 S. Ct. 912, 922

18 (2012) (citations and quotation marks omitted).  "Negligence on the part of a prisoner's

19 postconviction attorney does not qualify as cause . . . because the attorney is the prisoner's agent,

20 and under well-settled principles of agency law, the principal bears the risk of negligent conduct on

21 the part of his agent."  *Id.* (citations and quotation marks omitted).  "Thus, when a petitioner's

22 postconviction attorney misses a filing deadline, the petitioner is bound by the oversight and cannot

23 rely on it to establish cause."  *Id.* (citations and quotation marks omitted).

24       The parties disagree over whether Mr. Couenhoven was acting as Petitioner's attorney when

25 he mailed the federal habeas petition on January 30, 2007.  Respondent argues that the

26 correspondence submitted by the Petitioner, as well as his own declarations, establish that

27 "petitioner was clearly proceeding with the assistance of counsel" during the time period in

28 question.  Respondent's Brief at 7.  Petitioner counters that "Mr. Couenhoven was not acting as Mr.

United States District Court

For the Northern District of California

1   Grecu's counsel and agent with respect to the federal petition, but instead was providing only

2   ministerial services."  Petitioner's Brief at 18.

3        Despite marking his correspondence with the heading "CONFIDENTIAL ATTORNEY

4   CLIENT COMMUNICATION," and despite Mr. Grecu referring to Mr. Couenhoven as "my

5   lawyer" and "my counsel" in his declarations, *see* First Grecu Declaration at 2; Second Declaration

6   of David Grecu ("Second Grecu Declaration") (Docket No. 68) ¶ 3, Couenhoven insists that he was

7   not acting as Grecu's attorney at the time he reviewed and mailed Grecu's federal habeas petition.

8   Mr. Couenhoven, who had served as Petitioner's attorney while his state habeas petition was on

9   appeal in the Sixth District, states that his "appointment as Mr. Grecu's lawyer ceased" on

10  "September 22, 1998," when the Sixth District rejected his client's petition.   Couenhoven

11  Declaration ¶ 4.  Couenhoven states that he sent a letter to Petitioner on April 16, 1998, informing

12  Mr. Grecu that he "could not represent him after the appeal was over."  *Id*. ¶ 4.  Regarding the

13  present federal petition, Mr. Couenhoven states "I had merely agreed, as a friend, to help Mr. Grecu

14  file his habeas petition *in propria persona* in this Court," and that he explained to the Petitioner that

15  he "was not agreeing to do anything else other than to file the petition for him after the Supreme

16  Court of California had ruled on his pending habeas petition."  *Id*. ¶¶ 7-8.  Mr. Couenhoven wrote a

17  letter to Petitioner on November 20, 2006, regarding the petition in which he reiterated that he "was

18  not going to redo his federal habeas petition or his exhibits, or give him any legal advice."

19  Couenhoven Declaration ¶ 9.  *See also* Couenhoven Declaration, Ex. C (November 20, 2006, Letter

20  from Couenhoven stating, *inter alia*, "I do not have the time to check a petition nor exhibits which

21  are as voluminous as yours," "you should ask for appointment of counsel," and "I do not remember

22  enough about the timing of your case to suggest whether you might have a problem with

23  timeliness.").  Couenhoven states, and the record before this Court confirms, that "at no time [has

24  Couenhoven] appeared as counsel for Mr. Grecu in this action or filed any other papers on his

25  behalf.  *Id*. ¶ 11.

26        "An attorney-client relationship is not created by the unilateral declaration of one party to the

27  relationship."  *Koo v. Rubio's Restaurants, Inc.*, 109 Cal. App. 4th 719, 729 (2003) (citing *Fox v.

28  Pollack,* 181 Cal. App. 3d 954, 959 (1986), for the proposition that individuals cannot unilaterally

United States District Court

For the Northern District of California

1   create an attorney-client relationship without the agreement of the attorney).  "One of the most

2   important facts" in discerning the existence of an attorney-client relationship is "the expectation of

3   the client based on how the situation appears to a reasonable person in the client's position."

4   *Certain Underwriters at Lloyd's London v. Argonaut Ins. Co.*, 264 F. Supp. 2d 914, 920 n.1 (N.D.

5   Cal. 2003) (citing *Responsible Citizens v. Superior Court*, 16 Cal. App. 4th 1717, 1733 (1993)).

6        The evidence before the Court establishes that a reasonable person in Petitioner's position

7   would not believe that an attorney-client relationship existed between Mr. Grecu and Mr.

8   Couenhoven at the time in question.  Couenhoven's letters to Petitioner as well as Couenhoven's

9   sworn declaration make clear that he would not act as Mr. Grecu's attorney in this matter.

10  Couenhoven's written declinations to provide Petitioner with legal advice and his offer to perform

11  nothing more than a cursory review of Mr. Grecu's habeas petition are sufficient to indicate to a

12  reasonable person in Petitioner's position that an attorney-client relationship was not being formed.

13  Couenhoven's practice of marking his correspondence with the heading "CONFIDENTIAL

14  ATTORNEY CLIENT COMMUNICATION" as a precautionary measure in order to protect its

15  contents from prison officials does not alter this fact, given that Couenhoven formerly served as

16  Petitioner's attorney, and Couenhoven had a continuing duty to preserve the confidence of his client

17  regarding information obtained during the course of that relationship.  *See* Couenhoven Declaration

18  ¶ 7 ("I put that legend on my letters to Mr. Grecu not because I was representing him, but because

19  we had a prior attorney-client relationship (from 1997 to 1998) and because without that legend,

20  prison officials would open Mr. Grecu's mail from me and read it.").

21       In sum, Respondent has not shown that Mr. Couenhoven was acting as Petitioner's attorney

22  at the time he mailed Mr. Grecu's federal habeas petition to this Court, and, consequently, the tardy

23  filing of Mr. Grecu's petition cannot be attributed to attorney negligence.  *Cf. Stillman v. LaMarque*,

24  319 F.3d 1199, 1201 (9th Cir. 2003) ("The lawyer *prepared* Stillman's habeas petition and arranged

25  with prison officials for Stillman to sign the document.  She then filed the document once Stillman

26  had signed it.  When a lawyer *prepares legal documents on behalf of a prisoner* and arranges for

27  those documents to be signed and filed, the prisoner is not proceeding without assistance of

28  counsel.") (emphasis added); *Birbrower, Montalbano, Condon & Frank v. Superior Court*, 17

Cal.4th 119, 128 (1998) (defining the practice of law in California to include the preparing of legal documents and the giving of legal advice).

### V.   CONCLUSION

For the reasons stated above, the Court finds that Petitioner has met his burden to show entitlement to equitable tolling.  The Court, therefore, **DENIES** the remainder of Respondent's Motion to Dismiss.  Respondent shall file an Answer to Petitioner's Habeas petition within 60 days, pursuant to Rules 4 and 5 Governing Section 2254 Cases in the United States District Courts, and Habeas Corpus Local Rule 2254-6.  *See* 28 U.S.C. foll. § 2254 R. 4 & 5; N.D. Cal. Habeas L.R. 2254-6.

This order disposes of Docket No. 64.

IT IS SO ORDERED.

Dated:  April 2, 2013

_____
EDWARD M. CHEN
United States District Judge