**United States District Court**
For the Northern District of California

1

2

3

4

5          UNITED STATES DISTRICT COURT

6          NORTHERN DISTRICT OF CALIFORNIA

7

8   DAVID B. GRECU,                          No. C-07-0780 EMC

9          Petitioner,
                                             **ORDER DENYING PETITION FOR**
10       v.                                  **HABEAS CORPUS**

11  M.S. EVANS, WARDEN,

12         Respondent.
    _____/

13

14

15               **I.    INTRODUCTION**

16       Pending before the Court is Petitioner David B. Grecu's petition for habeas corpus.

17  Petitioner asserts that he is entitled to habeas relief based on ineffective assistance of counsel,

18  alleged prosecutorial misconduct, and the involuntariness of his plea agreement underlying his state

19  court conviction.  For the following reasons, the petition is **DENIED**.

20       **II.    FACTUAL & PROCEDURAL BACKGROUND**

21       On July 21, 1991, Petitioner David Grecu was arrested for possession of cocaine in violation

22  of Health & Safety Code § 11350.  Petition for Habeas Corpus ("Petition") at 1.  In an attempt to

23  avoid prosecution, Petitioner began to make controlled drug purchases from drug dealers in Santa

24  Cruz County on behalf of the Santa Cruz Narcotics Unit.  *Id.* at 2.  In September 1991, the Santa

25  Clara Police traced a gun stolen during a home robbery to Petitioner, and arrested him on a robbery

26  charge.  *Id.*; *see also* Petition, Ex. I, at 34.

27       Petitioner eventually retained attorney David Kraft to represent him.  In November 1991,

28  Petitioner began cooperating with the authorities.  He confessed to his involvement in dozens of

**United States District Court**
For the Northern District of California

1  robberies carried out by the David Ianniciello Crime Family, identified other perpetrators, drove

2  with law enforcement to locate clothing and masks worn during the robbery, and provided

3  information to the authorities regarding other residential robberies and auto thefts that occurred in

4  Santa Clara, Monterey, Sacramento, and Santa Cruz Counties. *Id.* at 36.  Eventually, Petitioner pled

5  guilty on November 20, 1991, to one count of receiving stolen property in violation of Cal. Penal

6  Code § 496, and one additional count. *Id.* at 35.  In exchange for the guilty plea, Petitioner received

7  no state prison commitment for his role in the underlying robbery. *Id.*  Ultimately, the Santa Clara

8  County assistant district attorney provided Petitioner with the following agreement, dated December

9  9, 1991:

> Based upon the information furnished by the Defendant as part of the
> disposition in the above entitled case and the continuing cooperation
> of the defendant, the Office of the District Attorney of Santa Clara
> County agrees it will not prosecute said defendant for any theft crimes
> such as auto theft, burglary and robbery, committed in Santa Clara
> County prior to the date of defendant's plea of guilty.

14  Petition, Ex. H, at 2.

15       On November 22, 1991, Petitioner contends that the Santa Clara County law enforcement

16  entities with whom he had been cooperating contacted the Santa Cruz County Sheriff's Office

17  because many of the crimes Petitioner had been describing occurred in Santa Cruz.  Declaration of

18  David Grecu ("Grecu Decl.") ¶ 11 (Docket No. 1).  That day, a Santa Cruz Sheriff's Deputy

19  accompanied Petitioner and Santa Clara authorities during a drive in which Petitioner identified

20  various scenes of crimes that occurred in Santa Cruz County.  *Id.*; *see also* Petition, Ex. I, at 21-22.

21  Petitioner claims that one of the crimes he identified during this drive was the residential burglary of

22  the residence of a Mr. Bothwell.  Petition, Grecu Decl. ¶ 11.  Petitioner further states in his

23  declaration that he was told by the officials that he would not be prosecuted by Santa Cruz

24  authorities for his statements. *Id.* ¶ 10.  The Santa Cruz County Sheriff's Officer who participated in

25  this drive states that Petitioner was told that the agreement he had with Santa Clara County "was not

26  binding with the Santa Cruz Sheriff's Office and that anything he told to us would be in the form of

27  a proffer" but that "anything he told us about . . . or alluded to that day would not be used against

28  him because he was represented by an attorney."  Petition, Ex. I, at 22.

United States District Court

For the Northern District of California

On November 25, 1991, Petitioner claims that he entered into a "verbal" immunity agreement that was recorded and that he began recounting all the crimes he had pointed out during the November 22 drive. Petition, Grecu Decl. ¶ 12, 15. This agreement was apparently made in the presence of Petitioner's attorney, David Kraft, Ms. Christine McGuire (a Santa Cruz County assistant district attorney), a representative from the Santa Clara County district attorney's office, and law enforcement personnel. *Id.* ¶ 12. Petitioner never clearly articulates the terms of this alleged immunity agreement and asserts that he was told that the tapes and transcripts of this agreement no longer exist. *Id.* ¶ 15. Nor does he describe what the Santa Cruz district attorney promised, if anything, with regard to immunity. On November 25, after entering into the alleged agreement, Petitioner claims that he spent "hours reciting all of the cases [he] had previously disclosed to Santa Cruz investigators on November 22, 1991." *Id.*

On December 5, 1991, Petitioner's attorney, Mr. Kraft, met with Ms. McGuire and law enforcement personnel from Monterey and Santa Cruz Counties. Ms. McGuire noted that Santa Cruz County had no deal with Mr. Grecu and could not evaluate whether it was willing to enter into an agreement until it had a "complete statement from him." Petition, Ex. B, at 2. She also indicated, however, that it was not their intent to use any statement by Petitioner against him. *Id.* Mike Brassfield, a Monterey County Sheriff's Deputy, likewise stated that "[n]o offer can be made without knowing the particular crimes and his participation in them." *Id.* At this meeting, Mr. Kraft, Petitioner's attorney, then indicated that he could no longer represent Petitioner. Specifically, he indicated to all present that:

> I've got a conflict. And, I can no, no longer represent Mr. Grecu. Ah, and it's a conflict that, ah, I just realized this morning. And, it's a, a, a, a, a conflict to the degree that I can't possibly, in my mind at this point, represent him. And so, I'll have to contact the State Bar Ethics Committee and find out what my alternatives are. Now, as I see it right now, my only alternative is to file a motion to have myself relieved . . . .

*Id.* at 3. Someone (the transcript does not indicate who stated this) described the conflict as follows:

> Um. It's. It appears that one of the named co-conspirators in two or more of the robberies that he's talked about is the person that paid his fee. And, ah, me personally, I don't see how we can proceed under those circumstances, to represent Grecu. And, especially in light of what we might get, and in future interviews. And, Grecu didn't tell

United States District Court
For the Northern District of California

> David [Kraft].  And, the lawyer that was the intermediary didn't tell
> David [Kraft].  And it was only once Ted [Keech, Santa Clara Police
> Department] and I talked, and then I talked to Dave [Kraft] and he
> rechecked this morning, that it, that this became known to him.

*Id.* at 4.  Petitioner alleges that the Santa Cruz County prosecutor threatened to file a complaint

against Mr. Kraft with the State Bar Association over this conflict unless Mr. Kraft withdrew from

representing Petitioner.  Petition, Grecu Decl. ¶ 18.  He further claims that investigators had shown

Mr. Kraft pictures of murder victims killed by Petitioner's co-defendants.  *Id.*  Finally, Petitioner

asserts that he was never advised of the conflict or given the opportunity to waive it.  *Id.*

In the wake of Mr. Kraft withdrawing as Petitioner's attorney, Ms. Lindy Hayes, a public

defender from Santa Clara County who had previously represented Petitioner, was brought in to

represent Petitioner again.  Petition, Ex. Q, at 2.  On December 9, 1991, Petitioner, with Ms. Hayes

present, began recounting to Santa Cruz law enforcement and district attorney personnel a number of

crimes he either participated in or knew about.  *See generally* Petition, Ex. B.  The morning of this

meeting, Ms. McGuire, the assistant district attorney with Santa Cruz County, recorded the

following agreement she had made with Ms. Hayes:

> I have conferred with Mr. Grecu's counsel.  It is my understanding
> that Mr. Grecu will give what is known as a proffer to the detectives,
> with respects [sic] to crimes committed to the [sic] Santa Cruz County
> by Mr. Grecu or crimes committed in Santa Cruz County that Mr.
> Grecu has knowledge of.  It is my understanding that Mr. Grecu will
> make a statement to the detectives with respect to those crimes.  That
> the statement is for the purpose of examining it for its truthfulness and
> its [sic] for the purpose of evaluating Mr. Grecu with respect for his
> credibility.  It is not the intention of the Santa Cruz District Attorney's
> [sic] to use this statement against Mr. Grecu or the fruits of this
> statement against Mr. Grecu.  It is only for the purpose of evaluating
> the truthfulness of the statement and for evaluating Mr. Grecu's
> credibility at this time.  We, at this time, acknowledge that there are no
> deals with Mr. Grecu with respect to any crimes that he may have
> committed in Santa Cruz County.  It should be understood that this
> agreement, with respect to giving the proffer, does not preclude Mr.
> Grecu from being prosecuted for any crimes committed in Santa Cruz
> County.  However, the understanding that the District Attorney's
> Office can not use the proffer as the basis of the prosecution.  Mr.
> Grecu, it should be understood, can be prosecuted based on other
> evidence independent of the proffer, however.

Petition, Ex. L, at 2.  The "use immunity" nature of this agreement was further described by

Petitioner's attorney later that day during the immunity proffer with law enforcement:

**United States District Court**
For the Northern District of California

1   [Lindy Hayes]: Basically, the immunity agreement covers crimes of a
    similar nature, to wit, theft-related crimes.

2

3   [David Grecu]: Okay.  We're talking about Santa Cruz County,
    though.  You said you didn't have anything in writing.

4   [Lindy Hayes]: Yeah.  But, what the immunity agreement is from
    Santa Cruz County is, it's not as far-reaching as the one from Santa
5   Clara.  But, it's on tape.  Basically, whatever they . . .

6   [David Grecu]: Yes.

7   [Lindy Hayes]: . . . Find out from you today cannot be used against
    you.

8

9   Petition, Ex. B, at 17.  The full text of this immunity proffer is not in the record.  According to the

10  page numbers, the full transcript runs 392 pages.  The only excerpts of the interview contained in the

11  record are the 23 pages attached as Exhibit B to the Petition.

12        On January 3, 1992, a criminal complaint was filed in Santa Cruz County against Petitioner.

13  Petition, Ex. N (Docket No. 1-15).  This complaint charged Petitioner with possession of cocaine in

14  violation of Health & Safety Code  § 11350 based on Petitioner's July 21, 1991 arrest.  *Id.*  On

15  February 3, 1992, a First Amended Criminal Complaint was filed against Petitioner.  Petition, Ex. D.

16  In addition to the cocaine possession charge, Petitioner was charged with six counts of residential

17  burglary in violation of Cal. Penal Code § 459.  *Id..*  Significant for purposes of Petitioner's

18  arguments in this action, Count 2 of the First Amended Criminal Complaint related to the October

19  13, 1989 robbery of the residence of Gordon Bothwell in Santa Cruz.  *Id.*  Ms. Hayes describes the

20  process by which these new charges came about as follows:

21        I found out that David had made a mistake, that he had failed in his
          effort to take a complete immunity bath as the Santa Cruz authorities
22        had proof on two separate cases that he had failed to tell them about,
          and that they could send him to prison on those but they would like to
23        make a deal with him because they needed his testimony in order to
          prosecute the other gang members.  I was upset, since I felt this was a
24        little outside the spirit of the agreement as David had talked about the
          major crimes and the two crimes paled in comparison, but I recognized
25        that they had him cornered and that David was frantic about not going
          to prison.  David Grecu and I decided to deal.

26

27  Petition, Ex. Q, at 3 (Docket No. 1-18).  Petitioner's account of what transpired differs greatly.

28  Petitioner asserts that he informed Ms. Hayes that he would not plead guilty because he had

5

1  "complete immunity under the agreement" and that Ms. Hayes then became "angry and stormed out

2  of the room."  Petition, Grecu Decl.  ¶ 35.  She further told him that he had to "cooperate and . . . go

3  along with the new 'deal', because if [he] didn't, [he] would end up in prison with [his] co-

4  defendants."  *Id.*  He also claims that she told him that the "prosecutor could put [him] in prison for

5  fourty [sic] years, and that they could do anything they wanted with me because I had given the

6  investigators such detailed information" and that they did "not have to honor any immunity

7  agreement negotiated by [his] former attorney."  *Id.*  ¶ 34.

8          That same day, Petitioner, Ms. Hayes, and Ms. McGuire (the Santa Cruz County assistant

9  district attorney) negotiated a plea agreement.  This plea agreement called for Petitioner to plead

10  guilty to the seven counts in the amended complaint in exchange for a 10 year prisoner term, to be

11  suspended "provided Mr. Grecu successfully completes five years probation, one year in jail to be

12  served in full."  Petition, Ex. L, at 3 (Docket No. 1-13).  He further agreed to testify at hearings,

13  trials, or grand jury proceedings about the involvement of a number of individuals in various

14  burglaries between 1989 and 1991.  *Id.* at 2-3.  It further provided that nothing Petitioner testified to

15  in these hearings could be used against him in any proceeding.  The agreement further referenced the

16  prior December 9, 1991 immunity agreement made with Santa Cruz officials as follows:

17                  I.      The District Attorney's office has previously granted use
                     immunity to Mr. Grecu for statements made to Sgt. Bradley in the
18                  process of investigating these crimes as follows: Statements by Mr.
                     Grecu, and the fruits of those statements, may not be used to prosecute
19                  him, so long as those statements are truthful and relate to robberies
                     (including any gun enhancements) or crimes of a lesser nature; crimes
20                  of a greater degree are not covered.  Crimes which may be proved by
                     independent means are also not covered.

21

22  *Id.* at 6.  Finally, the agreement specified that if Petitioner failed to testify or testified untruthfully:

23                  then this agreement is rescinded, Mr. Grecu's guilty plea as described
                     in paragraph D is deemed withdrawn and Mr. Grecu can be prosecuted
24                  or subjected to any penalty for Count 1 and Count 2 as set forth on the
                     Amended Complaint [the cocaine possession and Bothwell burglary
25                  counts] . . . in the same manner and to the same extent as he would be
                     prosecuted or subjected to but for this agreement.  The plea of guilty
26                  of Counts 3 through 7 may not be used as independent evidence to
                     prosecute Mr. Grecu.

27

28  *Id.* ¶ E.

On the evening of February 3, Ms. Hayes, Ms. McGuire, and Petitioner appeared before the Superior Court for the County of Santa Cruz.  Ms. Hayes indicated that even though she was a public defender in Santa Clara County, she was representing Petitioner as a "concession from [her] county to help out, since [she] represented Mr. Grecu over there and because Mr. Grecu wanted me to represent him."  Petition, Ex. A, at 4 (Docket No. 1-2).  Ms. Hayes indicated that the parties had reached an agreement and requested that the court accept it.  *Id.*

The court expressed confusion regarding the effect of any non-compliance by Petitioner, insofar as the applicable paragraph in the agreement (quoted above) drew an apparent distinction between Counts 1 and 2 and 3 through 7.  That led to the following exchange:

> THE COURT: All right.  Paragraph E is not as straightforward as sometimes – I take it that Mr. Grecu's exposure, and correct me if I'm wrong, if – if it is determined that he has perjured himself in – in any of his testimony as to any of the incidents enumerated in Paragraph D, his only exposure is to Counts 1 and 2 of the amended complaint.
>
> MS. HAYES: That's right, Your Honor.
>
> THE COURT: So – I am not suggesting this is going to happen.  If it should be determined that he's perjured himself a number of times, he still will have the benefit of this agreement as it relates to Counts 3 through 7?
>
> MS. HAYES: No, Your Honor.  He has complete immunity right now as to Counts 3 through 7.  In order to reach that agreement he had to surrender some of that immunity.  That was the agreement we've made.

*Id.* at 8.  The court then confirmed from the parties that Petitioner was going to plead guilty as to all seven counts.  Ms. McGuire then provided the following statement in an attempt to explain the relationship between the prior "use immunity" agreement and the current plea agreement:

> MS. McGUIRE: And by way of – of explanation, so that it is clear, Mr. Grecu gave a proffer to law enforcement and was granted use immunity with respect to that proffer for the purposes of evaluating him with respect to his credibility and corroboration of that information.
> Separate and apart from those statements, law enforcement was able to make Mr. Grecu with respect to two crimes independent of that proffer and that's – those are reflected in Counts 1 and 2.  The balance of those counts [counts 3 through 7], the prosecution cannot make against Mr. Grecu, but as part of this plea negotiation, he is willing to

United States District Court

For the Northern District of California

1
2

surrender part of that use immunity and enter pleas to the remaining counts.

3   *Id.* at 8.  Thus, because law enforcement could not tie Petitioner to Counts 3 through 7 independent

4   of his statement, they were unable to prosecute him for them unless he pleaded guilty.  Petitioner

5   agreed to do so as to avoid prison time for Counts 1 and 2 which were not covered by the use

6   immunity.  *See id.* at 9-10.  After advising Petitioner of his rights and ensuring that his plea was

7   voluntary, Petitioner pleaded guilty to each Count in the First Amended Complaint.  *See id.* at 15.

8        On March 3, 1992, Petitioner decided to refuse to cooperate as required under the plea

9   agreement and sought to withdraw his guilty pleas.  Petition, Ex. E, at 2 (Docket No. 1-6) ("Ms.

10  Hayes advises the Court that the defendant is now refusing to testify in the matters set forth in the

11  'Agreement' of 2-3-92 and requests that the plea be withdrawn.").  Petitioner is unclear as to what

12  caused him to decline to participate in the plea agreement between February 3, 1992 and March 3,

13  1992.  In his declaration, Petitioner suggests it is because his immunity agreement was "broken"

14  because he had "worked off" the drug possession charge (Count 1) and that the Bothwell burglary

15  (Count 2) was included in his immunity proffer.  Petition, Grecu Decl. ¶ 38, 41.  The Superior Court

16  granted the motion to withdraw the plea.  Petition, Ex. E, at 2..

17       On March 30, 1992, Petitioner again decided to accept the agreement and sought to plead

18  guilty pursuant to the agreement.  *See generally* Exhibits Lodged in Support of Answer ("Lodged

19  Exhibits"), Ex. 2.  In his declaration, petitioner suggests this was motivated, in part, by encounters

20  he had with various co-defendants (including David Ianniciello) who threatened his life should he be

21  sent to prison.  Petition, Grecu Decl. ¶ 44.  On the morning of March 30, the Superior Court began a

22  plea colloquy with Petitioner.  Petitioner stated he understood his obligations under the plea

23  agreement and that he understood he was giving up his right to trial.  Lodged Exhibits, Ex. 2, at 11-

24  12.  Petitioner asked the court about the possibility of the first degree robbery charges being reduced

25  to second degree robbery at the end of his term of probation, but the Court informed him that

26  Petitioner would have to make a motion for such relief and there was no guarantee it would be

27  granted.  *Id.* at 12-13.  Ultimately, the court refused to accept the plea when a dispute arose over

28

United States District Court

For the Northern District of California

1   whether Petitioner was required to pay restitution. *Id.* at 19-21.  The Court found the parties had not

2   reached a full agreement because of this dispute. *Id.* at 22-23.

3       After having further time to consult with Ms. Hayes regarding the question of restitution,

4   Petitioner agreed to plead guilty. *Id* at 24.  Petitioner returned before the Superior Court and stated

5   that he had "no more questions" regarding the plea agreement and that it had all been explained to

6   him. *Id.*  After referring to the plea agreement, the court asked petitioner if there had been "any

7   other promises or threats to cause [him] to enter" the plea. *Id.* at 26.  The Petitioner replied there

8   was not and that his plea was free and voluntary. *Id.*   Petitioner proceeded to plead guilty to each

9   charged in the amended complaint *Id.* at 27-29.  Accordingly, Petitioner was sentenced to prison for

10   10 years, but the sentence was suspended with petitioner being sentenced to one year in the county

11   jail and then granted probation for five years.  Lodged Exhibits, Ex. 1, at 5.

12       Plaintiff's probation was subsequently revoked on November 30, 1994. *Id.* at 9.  Petitioner

13   was again represented by Lindy Hayes at this proceeding. *Id.*  On February 21, 1995, Petitioner's

14   probation was reinstated. *Id.* at 11.  On December 14, 1995, his probation was again revoked,

15   apparently for failure to pay restitution as required. *Id.* at 12; 14.  Petition was again represented by

16   Ms. Hayes at this proceeding. *Id.* at 14.  Petitioner admitted the violation and his probation was

17   reinstated. *Id.*

18       In late 1996, Petitioner was arrested, and eventually convicted, for second degree burglary

19   and grand theft in Napa County. *Id.* at 46-49.  On June 13, 1997, the probation for his Santa Cruz

20   County conviction was revoked for the third time with Petitioner being sentenced to his suspended

21   10 year prison term, to run consecutively with the indeterminate life sentence resulting from his

22   Napa conviction. *Id.* at 19, 22-23, 25.[1]  Petitioner was again represented by Ms. Hayes at this

23   proceeding. *Id.* at 22.  Petitioner appealed his parole revocation to the California Court of Appeals.

24   *Id.* at 27.  The Court of Appeal affirmed the conviction on July 21, 1998 in an unpublished opinion.

25

26

27       _____

        [1] Petitioner was sentenced to an indeterminate life sentence under California's three-strikes

28   law.  The "prior strikes" for purpose of this sentence were the burglary counts to which Petitioner
    pleaded guilty in Santa Cruz County on March 30, 1992.  Petition, Ex. W, at 3-6.

United States District Court

For the Northern District of California

1  Ex. 5 to Respondent's Answer to OSC, at 4.  Petitioner did not appeal to the California Supreme

2  Court.  *Id.*

3       Petitioner then filed a petition for writ of habeas corpus in the California Superior Court for

4  the County of Santa Cruz on August 23, 1999.  Petition for Habeas Corpus ("Petition") at 24, ¶ 54

5  (Docket No. 1); Petition, Ex. U.  The Superior Court issued an order to show cause as to Counts 3

6  and 4 raised in Petitioner's petition.  Petition, Ex. U.  In Count 3, Petitioner alleged that Ms. Hayes

7  rendered ineffective assistance of counsel when she failed to file a motion to dismiss in the initial

8  robbery and cocaine charges in 1992 as the prosecutor had "charged [him] with crimes covered by

9  the immunity agreement."  Exhibits in Support of Answer, Ex. 6, at 5. In Count 4, Petitioner alleged

10 that his guilty pleas were involuntary because he "pled guilty only on the advice of my attorney and

11 she falsely or mistakenly told me my immunity agreement was worthless and could not prevent the

12 prosecution of the charges."  *Id.* at 6.[2]

13       On September 2, 2005, the Superior Court denied the petition for habeas corpus.  Petition,

14 Ex. T (Docket No. 1-21).  The court ultimately concluded that petitioner's counsel was "reasonably

15 effective."  *Id.* at 12.  It stated:

16          The petitioner appeared to have been aware of the fact that the
            Bothwell burglary may not have been covered in the use agreement, as
17          referred to, and he – at the time of entry of plea, the minutes reflect
            that he refused to accept the negotiated plea agreement on the morning
18          of March 30th of 1992, and the matter was continued to later in the
            day, for petitioner to have additional time to consider the disposition
19          and confer with his attorney.

20 *Id.* at 12-13.  It then asserted that "[i]t is obvious from the record that the decision to enter plea or

21 not was a thoughtful decision – or a thoughtful one, based on a tactical decision to avoid a state

22 prison commitment."  *Id.* at 13.  It then found that he had failed to show prejudice as to the presence

23 of the Bothwell robbery in the plea agreement because he "would still have been sentenced to state

24 prison on the other counts, with two of the first-degree burglaries having been sentenced to run

25 _____

26      [2] The other two counts of the Petition alleged: (1) That David Kraft provided ineffective
    assistance by withdrawing based on a conflict without counseling him regarding the conflict and
27  giving him an opportunity to waive said conflict (Count 1); and (2) That Christine McGuire
    "interfered with [his] Sixth Amendment right to counsel by forcing David Kraft . . . to withdraw."
28  *Id.*

United States District Court

For the Northern District of California

1   concurrent with the remaining sentence." *Id.* Finally, the court noted that under the case of *In re*

2   *Clark*, 5 Cal. 4th 750 (1993), Petitioner had a responsibility to act within a "reasonable period of

3   time" to assert his claim. *Id.* at 13. It concluded that Petitioner had waited an unreasonable period

4   of time, in that he could have raised the ineffective assistance claim in his direct appeal from the

5   imposition of the consecutive 10 year sentence but did not do so. Quoting *Clark*, the court stated

6   that "'in the absence of special circumstances constituting an excuse for failure to employ that

7   remedy, the writ will not lie where the claimed errors could have been, but were not raised upon a

8   timely appeal from a judgment of conviction.'" *Id.* at 14 (quoting *In re Clark*, 5 Cal. 4th at 765).

9       Petitioner subsequently petitioned for a writ of habeas corpus before the California Court of

10  Appeal and the California Supreme Court, both of which were denied, on April 14, 2006 and

11  January 17, 2007, respectively,  without the courts providing reasoning. *See* Lodged Exhibits, Ex.

12  12; Petition, Ex. Z.

13                          **III.   STANDARD OF REVIEW**

14      The district court may entertain a petition for a writ of habeas corpus on "behalf of a person

15  in custody pursuant to the judgment of a State court only on the ground that he is in custody in

16  violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Under

17  the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a petition may not be

18  granted with respect to any claim that was adjudicated on the merits in state court unless the state

19  court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an

20  unreasonable application of, clearly established Federal law, as determined by the Supreme Court of

21  the United States; or (2) resulted in a decision that was based on an unreasonable determination of

22  the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

23      "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court

24  arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the

25  state court decides a case differently than [the] Court has on a set of materially indistinguishable

26  facts." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). Under the "unreasonable application" prong,

27  a federal habeas court may only grant the writ if the state court identified the correct legal principle

28  and standard from the Supreme Court' decisions, but "unreasonably applie[d] that principle to the

1    facts of the prisoner's case." *Id.* at 409; *see also DeWeaver v. Runnels*, 556 F.3d 995, 997 (9th Cir.

2    2009) ("The state court unreasonably applies clearly established federal law if it 'either 1) correctly

3    identifies the governing rule but then applies it to a new set of facts in a way that is objectively

4    unreasonable, or 2) extends or fails to extend a clearly established legal principle to a new context in

5    a way that is objectively unreasonable.'" (quoting *Hernandez v. Small*, 282 F.3d 1132, 1142 (9th

6    Cir. 2002)).

7         That a state court may have erroneously applied federal law does not render the state court's

8    decision unreasonable.  Rather, the state court' must have been "objectively unreasonable" – an

9    extremely high standard that "precludes federal habeas relief so long as 'fair-minded jurists could

10   disagree' on the correctness of the state court's decision."  *Henry v. Ryan*, 720 F.3d 1072 (9th Cir.

11   2013) (quoting *Harrington v. Richter*, 131 S. Ct. 770, 7861)).  "[E]valuating whether a rule

12   application was unreasonable requires considering the rule's specificity.  The more general the rule,

13   the more leeway courts have in reaching outcomes in case-by-case determinations."  *Yarborough v.*

14   *Alvarado*, 541 U.S. 652, 664 (2004).

15        Where there is no reasoned opinion by a state court on a given claim, "the habeas petitioner

16   must still show there was no reasonable basis for the state court to deny relief."  *Harrington*, 131 S.

17   Ct. at 784.  In such cases, the court must determine "what arguments or theories . . . could have

18   supported[] the state court's decision" before asking whether "it is possible fairminded jurists could

19   disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the

20   Supreme] Court."  *Id.* at 786; *see also Dove v. Ryan*, 500 F. App'x 571, 572 (9th Cir. 2012) (same).

21                              **IV.    DISCUSSION**

22        Petitioner has raised 4 claims in his petition for habeas corpus.  The Court will address each

23   in turn.

24   A.    Petitioner's First Claim, Alleging Ineffective Assistance of Counsel Against His First

25         Attorney, Is Barred by Petitioner's Subsequent Guilty Plea

26        Petitioner argues that his first attorney, David Kraft, provided ineffective assistance of

27   counsel by withdrawing from his criminal case "based on an alleged conflict of interest without

28   counseling me about the possible conflict and without giving me any opportunity to waive the

**United States District Court**
For the Northern District of California

1  conflict." Petition at 6. In support of this claim, Petitioner alleges that Mr. Kraft informed him that

2  the prosecutor, Ms. McGuire, "forced him to resign." *Id.* Petitioner asserts in his declaration that

3  Mr. Kraft told him that Ms. McGuire told him "that she would file a complaint against him unless he

4  withdrew from representing" him. Petition, Grecu Decl. ¶ 18. Petitioner then alleges that Mr. Kraft

5  "walk[ed] out" on him after he had negotiated an immunity agreement on behalf of Petitioner. *Id.*

6  He asserts that if he had been aware of the potential conflict, he would have waived that conflict

7  "and chosen to continue with David Kraft as my lawyer." *Id.* The California Superior Court

8  rejected this claim without issuing an order to show cause or providing its reasoning.

9      Petitioner's claim fails on federal habeas review because it is barred by his subsequent guilty

10  plea. The Ninth Circuit has noted:

11          As a general rule, one who voluntarily and intelligently pleads guilty
            to a criminal charge may not subsequently seek federal habeas corpus

12          relief on the basis of pre-plea constitutional violations. A defendant
            may only attack the "voluntary and intelligent character of the guilty

13          plea," by showing that the advice he received from counsel was not
            "within the range of competence demanded of attorneys in criminal

14          cases."

15  *Hudson v. Moran*, 760 F.2d 1027, 1029-30 (9th Cir. 1985) (quoting first *Tollett v. Henderson*, 411

16  U.S. 258, 267 (1973), and then *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). The rationale

17  behind this rule is that a "'guilty plea represents a break in the chain of events which has preceded it

18  in the criminal process.'" *Hurlow v. United States*, 726 F.3d 958, 966 (9th Cir. 2013) (quoting

19  *Tollett*, 411 U.S. at 267). Even where a petitioner raises an ineffective assistance claim, the

20  petitioner must allege "that he entered the plea agreement based on advice of counsel that fell below

21  constitutional standards. In other words, he must allege that the plea agreement was 'the product of

22  ineffective assistance of counsel,' or 'tainted by ineffective assistance of counsel.'" *Id.* (quoting first

23  *United States v. Jemison*, 237 F.3d 911, 916 n.8 (7th Cir. 2001), and then *United States v.*

24  *Henderson*, 72 F.3d 463, 465 (5th Cir. 1995)).

25      Petitioner has alleged no facts, either in his declaration or in his petition, which suggest that

26  his guilty plea was the product of, or tainted by, Mr. Kraft's alleged ineffective assistance. As stated

27  above, the sole basis of Petitioner's first claim is that Mr. Kraft acted ineffectively by withdrawing

28  without providing Petitioner with the ability to waive the apparent conflict. However, even if it is

United States District Court

For the Northern District of California

1    assumed that the way Mr. Kraft withdrew fell below constitutional standards, the nature of this

2    constitutional violation does not relate to any advice Mr. Kraft gave Petitioner relating to a

3    subsequent plea agreement or Petitioner's subsequent decision to plead guilty.  Stated another way,

4    there are no allegations or arguments by Petitioner that he "entered the plea agreement based on

5    advice of [Mr. Kraft] that fell below constitutional standards."  *Id.*; *see also Fairbank v. Ayers*, 650

6    F.3d 1243, 1254 (9th Cir. 2011) (noting, under *Tollett*, that a petitioner's *Strickland* claim is "limited

7    to the contention that trial counsel was ineffectively only in advising petitioner to plead guilty");

8    *Moran v. Godinez*, 57 F.3d 690, 700 (9th Cir. 1994), *superseded by statute on other grounds as

9    stated in McMurtrey v. Ryan*, 539 F.3d 1112, 1119 (9th Cir. 2008) (holding that a petitioner who

10   pleaded guilty could not raise an ineffective assistance claim based on his prior attorney's alleged

11   failure to prevent the use of his confession).  Accordingly, Petitioner is barred by his subsequent

12   guilty plea from asserting this claim.

13          Petitioner's claim also fails on the merits as the state court could have reasonably concluded

14   that Petitioner had failed to demonstrate actionable ineffective assistance on the part of Mr. Kraft.

15   Ineffective assistance of counsel claims are governed by the Supreme Court's decision in *Strickland

16   v. Washington*, 466 U.S. 668 (1984).  Under this standard, counsel is constitutionally deficient if its

17   representation "fell below an objective standard of reasonableness" such that it was outside "the

18   range of competence demanded of attorneys in criminal cases."  *Gulbrandson v. Ryan*, 738 F.3d 976,

19   988 (quoting *Strickland*, 466 U.S. at 687-88).  This is a highly deferential standard, and courts must

20   "guard against the temptation 'to second-guess counsel's assistance.'"  *Id.* (quoting *Strickland*, 466

21   U.S. at 689).  Further, even where counsel provided objectively unreasonable assistance, a petitioner

22   must show prejudice – that is, a "reasonable probability that, but for counsel's unprofessional errors,

23   the result of the proceeding would have been different."  *Id.* (quoting *Strickland*, 466 U.S. at 694).

24   Given the deference courts must give to counsel's decisions under the *Strickland* test as well as the

25   stringent standard of review afforded state court decisions under AEDPA, petitioner asserting

26   ineffective assistance claims on federal habeas review have a tremendous burden of proving an

27   entitlement to relief.  *See, e.g.*, *Cheney v. Washington*, 614 F.3d 987 (9th Cir. 2010) (noting the

28

United States District Court
For the Northern District of California

1    Supreme Court's command that ineffective assistance claims under AEDPA are subject to a "doubly

2    deferential" judicial review).

3        Here, the state court could have reasonably concluded that Petitioner did not suffer any

4    prejudice as a result of Mr. Kraft's alleged ineffective assistance of counsel.  As discussed above,

5    Mr. Kraft was, apparently, being paid to represent Petitioner by David and Robert Ianniciello – two

6    individuals against whom Petitioner was providing extensive information to law enforcement and

7    who allegedly orchestrated the criminal conspiracy of which Petitioner was a part.  Petition, Grecu

8    Decl. ¶¶ 18-19.  Mr. Kraft notified the prosecutors of his conflict on the morning of December 5,

9    1991.  Petition, Ex. B, at 2.  Petitioner then retained Ms. Hayes no later than December 9, 1991.

10   Petition, Grecu Decl. ¶ 23, 24.

11       Petitioner's only argument as to prejudice is that "[h]ad he been advise[d] about a potential

12   conflict I would have waive[d] that conflict and chosen to continue with David Kraft as my lawyer.

13   He had my full faith and trust."  Petition at 6.  This is insufficient to show prejudice.  First, it is not

14   at all apparent that had Petitioner waived the conflict, Mr. Kraft would have remained his attorney.

15   Mr. Kraft in the December 5, 1991 transcript expressed a concern for his safety having discovered

16   the identity of the parties paying his fees:

17            TF[]:   Mr. Kraft, do you feel that you have an obligation to tell this
18                    other person [who was paying his fee] what's going on?

19            DK:     Ah, no.  I do not have an obligation.  I have no intentions of
                      doing that.  Number one, ah, I have some concern for my own
20                    safety.

21            TF:     I understand.

22            DK:     These people are, are, from what I have gathered, are not people to
                      have any association with.  And, I don't intend to have any contact
23                    with them, whatsoever.  On any degree.

24   Petition, Ex. B, at 5.  Petitioner recognizes that Mr. Kraft was motivated in withdrawing, at least in

25   part, because of a concern for his own safety.  *See* Petitioner, Grecu Decl. ¶ 20 ("Petitioner alleges

26   that Mr. Kraft's desire to have himself relieved as my counsel had more to do with his (reasonable)

27   fear of my codefendants than any legitimate conflict . . . .").

28

**United States District Court**
For the Northern District of California

1    In these circumstances, Petitioner's willingness to waive the conflict would not have

2    eliminated the issue.  As the Supreme Court in *Wheat v. United States*, 486 U.S. 153 (1988),

3    recognized, while the Sixth Amendment guarantees a defendant to competent counsel, it does not

4    "ensure that a defendant will inexorably be represented by the lawyer whom he prefers."  *Id.* at 159.

5    In that case, a habeas petitioner had sought permission from the trial court to substitute in as counsel

6    the attorney who was representing his co-defendants.  Despite the petitioner waiving the apparent

7    conflict, the trial court denied the substitution motion.  The Supreme Court found no Sixth

8    Amendment violation, stating:

9        Petitioner insists that the provision of waivers by all affected
         defendants cures any problems created by the multiple representation.
10       But no such flat rule can be deduced from the Sixth Amendment
         presumption in favor of counsel of choice.  Federal courts have an
11       independent interest in ensuring that criminal trials are conducted
         within the ethical standards of the profession and that legal
12       proceedings appear fair to all who observe them. . . .  Not only the
         interest of a criminal defendant but the institutional interest in the
13       rendition of just verdicts in criminal cases may be jeopardized by
         unregulated multiple representation.

14

15   *Id.* at 160.  The Ninth Circuit has expressed similar concerns in cases where third-parties fund a

16   defendant's defense in cases involving large conspiracies.  In *Quintero v. United States*, 33 F.3d

17   1133 (9th Cir. 1994), the Ninth Circuit recognized that there are

18       "inherent dangers that arise when a criminal defendant is represented
         by a lawyer hired and paid by a third party, particularly when the third
19       party is the operator of the alleged criminal enterprise.  One risk is that
         the lawyer will prevent his client from obtaining leniency by
20       preventing the client from offering testimony against his former
         employer or from taking other actions contrary to the employer's
21       interest."

22   *Id.* at 1135 (quoting *Wood v. Georgia*, 450 U.S. 261, 268-69 (1981)).  Given Mr. Kraft's apparent

23   desire to withdraw, his fear for his safety, and the nature of the conflict at issue, it appears likely that

24   even had Petitioner been willing to waive any conflict, Mr. Kraft would have withdrawn as counsel.

25       Finally, the state court could reasonably have concluded that Petitioner suffered no prejudice

26   as he was represented by counsel throughout the Santa Cruz proceedings.  Though Petitioner alleges

27   Mr. Kraft's withdrawal left him "without counsel," there are no allegations in the petition or in his

28   declaration that suggests the absence of counsel during the four-day period (between December 5

and December 9) prejudiced him in any way.  The only statement in his declaration regarding these

four days states:

> I was now without counsel.  The next day, the Santa Clara police lead
> investigator Sergeant Ted Keech and Detective Richard Rodriguez
> contacted me and said that they could arrange for new counsel to
> represent me in Santa Cruz and Santa Clara counties.  They suggested
> Lindy Hayes, the Santa Clara County public defender who had briefly
> represented me at my initial arraignment in Santa Clara County.  I was
> reluctant to agree based on my prior contacts with Ms. Hayes.  Sgt.
> Keech and Det. Rodriguez convinced me to accept Lindy Hayes by
> telling me that she had been thoroughly briefed about my immunity
> agreement and the arrangements made with both counties' authorities.
> I felt that I had little choice, and that having any attorney was better
> than going forward with none.  I reluctantly agreed to be represented
> by Lindy Hayes.

*Id.* ¶ 22.  Petitioner was subsequently represented by Ms. Hayes during his immunity proffer and at

subsequent court proceedings.  Petitioner failed to show that had the conflict been waived and Kraft

stayed on, he would not have taken the same course of action.

Ultimately, *Strickland* requires more than a mere possibility that the proceedings would have

come out a different way – it requires a "reasonable probability."  *See Correll v. Ryan*, 539 F.3d 938

(9th Cir. 2008) ("This burden 'affirmatively [to] prove prejudice' requires Correll to show more than

the mere possibility that counsel's performance prejudiced the outcome.").  The state court could

have reasonably concluded that there was no reasonable probability that Mr. Kraft's failure to advise

Petitioner about the nature of the conflict and give him the opportunity to waive the conflict affected

the outcome of the criminal proceedings.  Accordingly, Plaintiff's first claim for habeas relief fails.

Finally, the Court notes that the authorities discussed above demonstrate that Mr. Kraft's

decision to withdraw was well within the "range of competence demanded of attorneys in criminal

cases."  *Strickland*, 466 U.S. at 687.  Having discovered that he had been retained by individuals

against whom Petitioner was seeking to provide information and evidence, Mr. Kraft could have

reasonably determined that his ability to provide effective representation and advice to Petitioner

was compromised.  In these circumstances, the state habeas court could reasonably have concluded

that Mr. Kraft provided reasonably effective representation.

For the foregoing reasons, Plaintiff's petition for habeas relief on this ground is **DENIED**.

**United States District Court**
For the Northern District of California

B.     Petitioner's Second Claim, Alleging Prosecutorial Misconduct, Is Barred by Petitioner's Subsequent Guilty Plea

Petitioner's second claim for relief alleges that "Christine McGuire, the Santa Cruz prosecutor, interfered with [his] Sixth Amendment right to counsel by forcing David Kraft, my retained lawyer, to withdraw from my case due to an allege[d] conflict of interest." Petition at 6. However, as discussed *supra*, a petitioner's guilty plea bars subsequent habeas claims for pre-plea constitutional violations that do not attack the knowing and voluntary nature of the guilty plea. *See, e.g.*, *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) ("As we explained in *Tollett v. Henderson*, a defendant who pleads guilty upon the advice of counsel may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann*."); *see also United States v. Cain*, 134 F.3d 1345, 1352 (8th Cir. 1998) ("[B]y pleading guilty, Errol Cain waived arguments of prosecutorial misconduct . . . ."). Moreover, for the reasons discussed above, Petitioner has not established any such alleged violation by Ms. McGuire which led to Mr. Kraft's withdrawal resulted in any cognizable prejudice to Petitioner. Accordingly, Petitioner's prosecutorial misconduct claim is barred by his guilty plea, and his petition for habeas relief on this ground is **DENIED**.

C.     Petitioner's Third Claim, Alleging Ineffective Assistance of Counsel, Fails to Meet the Deferential Standard Under AEDPA

Petitioner's third claim asserts that his second counsel, Lindy Hayes, provided ineffective assistance of counsel when she failed to challenge the inclusion of the Bothwell robbery in the February 1992 amended criminal complaint. Petitioner contends that he provided Santa Cruz investigators with information regarding this robbery in his immunity proffer and, therefore, he could not be prosecuted for the crime under his use immunity agreement. Petition, at 6; *see also* Traverse at 8 (stating that Lindy Hayes provided ineffective assistance "in failing to challenge the Bothwell burglary charge as a violation of the immunity agreement").

Respondent argues first that this claim is procedurally barred, and, alternatively, the state habeas court's rejection of this claim was not objectively unreasonable. In response, Petitioner contends that the state habeas court failed to address this claim and that an evidentiary hearing is

18

**United States District Court**
For the Northern District of California

1   necessary to determine whether Petitioner provided information about the Bothwell burglary to

2   authorities during his immunity proffer.

3         1.    <u>The State Court Adequately Addressed Plaintiff's Claim Against Ms. Hayes</u>

4         Petitioner contends that the California Superior Court which considered his state habeas

5   petition did not address – and therefore did not deny – the ineffective assistance of counsel claim.

6   Rather, he argues that the transcript of the proceedings reveals that the state court only denied the

7   *fourth* claim for relief, which asserted that his 1992 guilty plea was not knowing and voluntary.

8   While Petitioner acknowledges the two claims are related, he contends that they are factually

9   distinct.  Specifically, he asserts that claim three "concerns Ms. Hayes' constitutionally deficient

10  performance in failing to challenge the District Attorney's charging of the Gordon Bothwell

11  residential burglary . . . as a violation of Petitioner's immunity agreement, through a motion to

12  dismiss."  Traverse at 8-9.  Claim four, by contrast, "concerns Ms. Hayes' constitutionally deficient

13  performance in failing to give Petitioner competent legal advice regarding the validity and scope of

14  the immunity agreement and the merits of taking a plea agreement under which he surrendered his

15  use immunity as to" the non-Bothwell burglary counts.  *Id.* at 9.

16        Petitioner's argument that the state habeas court failed to address the third claim for relief is

17  based on the fact that the Superior Court made reference to there being only *three* asserted claims for

18  relief.  For example, the court stated:

19            THE COURT:  . . .  Counsel outlined the issue correctly.
    There were initially, upon the first filing of the petition, *three issues*
20  that Mr. Grecu had raised.  The Court denied the petition on two of
    those grounds.  *There was a third ground that had not been dealt with*,
21  as the Court ordered the district attorney's office, by way of OSC, to
    file a response.

22
              MR. DUDLEY [Mr. Grecu's attorney]:  I thought there was
23  actually four issues, and the Court had denied two and issued on two,
    but –

24

25  Petition, Ex. T, at 4-5 (Docket No. 1-21) (emphasis added).  Petitioner thus contends that

26  Respondent may not rely on the state habeas court's express findings because its findings were only

27  directed toward the fourth claim for relief (regarding the voluntariness of Petitioner's guilty plea).

28

The Court rejects Petitioner's argument.  While the Superior Court appeared to have conflated the third and fourth claims in a technical sense, a review of the record demonstrates that the court fully understood the claims being presented and made findings pertinent to both claims. Significantly, immediately after the above quoted language, Petitioner's counsel before the state habeas court agreed that the court had "phrased the issue" correctly:

> THE COURT:  I believe that there were three and one remained, but the one that remains, I think, if there were – Count 2 was the matter which – of seven counts, and the sole issue here is whether the writ of habeas corpus should issue because of an ineffective assistance of counsel for not moving to dismiss Count 2, the Bothwell – B-o-t-h-w-e-l-l –
>
> MR. DUDLEY: Bothwell
>
> THE COURT:  – burglary, residential burglary, which was Count 2 of 7.  The defendant pled guilty to that, which may have been or may not have been covered in a use immunity agreement prior to the entry of the plea.
> So that's what this whole issue is around.
>
> MR. DUDLEY: This is correct.
>
> I think Ms. McGuire has always conceded that, with regard to the other burglary counts, they were always covered by the use immunity agreement.
>
> The issue was, was the –
>
> THE COURT: Count 2.
>
> MR. DUDLEY:  – trial counsel ineffective for not realizing, as per the arguments of Mr. Grecu and myself, that – and it has been our position all along that Count 2, when properly analyzed . . . is covered by the use of the immunity agreement.
> So I think the Court has correctly phrased –
>
> THE COURT: Phrased the issue?
>
> MR. DUDLEY: – the issue; correct.

*Id.* at 6-7.  This excerpt shows that the state court was entirely aware that the issue it was addressing was whether or not Ms. Hayes provided ineffective assistance in "not moving to dismiss Count 2" – the Bothwell burglary.  It also demonstrates that Petitioner's counsel agreed with the Court's articulation of the issue presented and further suggests that Petitioner's counsel viewed claim 4 as

United States District Court

For the Northern District of California

1   tied to, or derivative of, claim 3.  This is further illustrated by Petitioner's second traverse before the

2   state court, where Petitioner stated:

3           Accordingly, contrary to the understanding of petitioner's trial
        counsel . . . that the Bothwell residential burglary incident was not
4           covered by the use immunity given to petitioner . . . , and the obvious
        erroneous advise [sic] that attorney gave to petitioner on this point,
5           petitioner entered pleas of guilty to the charges in issue that he would
        not otherwise have entered.

6

7   Lodged Exhibits, Ex. 10, at 13.

8           Accordingly, Petitioner described the key issue raised by the state habeas petition as whether

9   or not Ms. Hayes provided ineffective assistance of counsel regarding the Bothwell robbery.

10  Petitioner then argued Ms. Hayes' alleged deficient investigation and advice to Petitioner regarding

11  the Bothwell robbery infected his guilty plea – rendering it not knowing and voluntary.  Given the

12  entirety of the transcript, and the clear focus of Petitioner's habeas petition and traverse, there is no

13  merit to Petitioner's contention that the state habeas court failed to address his third claim for relief.[3]

14  The Court further notes that the critical issues were common to *both* the third and fourth claims for

15  relief:  whether the Bothwell robbery was included in the immunity agreement and Ms. Hayes'

16  performance regarding this issue.

17          2.      Petitioner's Claim for Ineffective Assistance of Counsel Is Procedurally Barred

18          Respondent argues that Petitioner's claim for ineffective assistance of counsel is

19  procedurally barred insofar as the state habeas court found that petitioner had unreasonably delayed

20  in presenting it.  After rejecting the merits of Petitioner's ineffective assistance claim, the Superior

21  Court stated:

22          The Court also feels that, under the *Clark* case, at 5 Cal. 4th
        750, it establishes a responsibility on the petitioner to act within a

23

24          [3] Further, even if the Court were, as Petitioner urges, to find that the state court failed to
    consider Petitioner's ineffective assistance claim (or, alternatively, that it failed to address the

25  knowing and voluntary plea claim), this would not aid Petitioner.  Petitioner would still be required
    to show there was no reasonable basis for the state court to deny relief, and the Court would have

26  been required to determine "what arguments or theories . . . could have supported[] the state court's
    decision."  *Harrington*, 131 S. Ct. at 784, 786; *see also Amado v. Gonzalez*, — F.3d — , 2014 WL

27  3377340, at *8 (9th Cir. July 11, 2014) (noting that where a "state-court opinion addresses some but
    not all of a defendant's claims, federal habeas courts should presume, as *Harrington* requires, that

28  the state court opinion adjudicated the federal claims . . . on the merits").

1     reasonable period of time, and there have been delays in this case for
      various reasons.
2           However, the Court feels that there has been an unreasonable
      amount of time that has passed in this case prior to the petitioner
3     raising his claim, including his appeal to the Sixth District Court of
      Appeal, and in *Clark* it states, " . . . in the absence of special
4     circumstances constituting an excuse for failure to employ that
      remedy, the writ will not lie where the claimed errors could have been,
5     but were not, raised upon a timely appeal from a judgment of
      conviction."
6

7     Petition, Ex. T, at 14.  The Respondent contends this alternative holding finding a procedural bar

8     represents an independent and adequate state law ground supporting the state court's determination,

9     therefore precluding federal habeas review.

10        "A claim in a federal habeas petition may be procedurally defaulted if it was actually raised

11    in state court but found to be defaulted on an adequate and independent state procedural ground."

12    *Jones v. Ryan*, 691 F.3d 1093, 1101 (9th Cir. 2012).  This rule applies even where the state court

13    reached the merits of the claim even after finding the claim procedurally barred.  *See, e.g.*, *Harris v.*

14    *Reed*, 489 U.S. 255, 265 n.10 (1989) ("[A] state court need not fear reaching the merits of a federal

15    claim in an *alternative* holding.  By its very definition the adequate and independent state ground

16    doctrine requires the federal court to honor a state holding that is sufficient basis for the state court's

17    judgment even when the state also relies on federal law."); *Bennett v. Mueller*, 322 F.3d 573, 580

18    (9th Cir. 2003) ("Although the California Supreme Court denied Bennett's state habeas petition both

19    on the merits as well as for lack of diligence, and thus considered the merits of Bennett's claim, we

20    must nevertheless examine whether denial for lack of diligence rested on an independent and

21    adequate state procedural ground.  If so, Bennett is procedurally barred from pursuing his claims in

22    federal court.").

23        Of course, a prerequisite for this rule to apply is a finding that the petitioner did, in fact,

24    procedurally default before the state court.  Federal courts will largely respect the judgments by state

25    courts that a petitioner has procedurally defaulted, just as they would any state court determination

26    of state law.  *See Lopez v. Schriro*, 491 F.3d 1029, 1043 (9th Cir. 2007).  At the same time, however,

27    "'[t]he procedural default doctrine self-evidently is limited to cases in which a 'default' actually

28    occurred *i.e.*, cases in which the prisoner actually violated the applicable state procedural rule.' . . .

**United States District Court**
For the Northern District of California

1    [A]n erroneously applied procedural rule does not bar federal habeas review." *Sivak v. Hardison*,

2    658 F.3d 898, 907 (9th Cir. 2011) (quoting 2 Randy Hertz & James S. Liebman, *Federal Habeas*

3    *Corpus Practice and Procedure* § 26.2[c] (6th ed. 2011)).  A federal court may reject a state court's

4    finding of procedural default where "the state court's interpretation is 'clearly untenable and

5    amounts to a subterfuge to avoid federal review of a deprivation by the state of rights guaranteed by

6    the Constitution.'" *Lopez*, 491 F.3d at 1043 (quoting *Knapp v. Cardwell*, 667 F.2d 1253, 1260 (9th

7    Cir. 1982)).  Where a petitioner did, in fact, procedurally default before the state court, "federal

8    habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and

9    actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to

10   consider the claims will result in a fundamental miscarriage of justice." *Rivera v. Hedgpeth*, No.

11   C12-03078 BLF (PR), 2014 WL 4184803, at *7 (N.D. Cal. Aug. 22, 2014) (citing *Coleman v.*

12   *Thompson*, 501 U.S. 722, 750 (1991)).

13          As quoted above, the state habeas court found that Petitioner had unreasonably delayed in

14   articulating his ineffective assistance of counsel claim, relying on the California Supreme Court's

15   decision in *In re Clark*, 5 Cal. 4th 750 (1993).  As this Court has previously noted, "*Clark* reiterates

16   several procedural rules governing petitions for writs of habeas corpus."  *Grecu v. Evans*, No. C07-

17   780, 2012 WL 4643871, at *5 (N.D. Cal. Oct. 1, 2012).  One such procedural rule is the requirement

18   that a "petitioner explain and justify any significant delay in seeking habeas corpus relief."  *Id.*

19   (quoting *Clark*, 5 Cal. 4th at 761).  Unlike most states, California applies a "general 'reasonableness

20   standard' to judge whether a habeas petition is timely filed."  *Walker v. Martin*, 131 S. Ct. 1120,

21   1225 (2011).  "The basic instruction provided by the California Supreme Court is simply that 'a

22   [habeas] petition should be filed as promptly as the circumstances allow . . . .'"  *Id.* (quoting *In re*

23   *Clark*, 5 Cal. 4th at 765 n.5).  Accordingly, an untimely petition – one characterized by an

24   unreasonable, unexplained delay in filing – will be procedurally barred.  A second procedural rule

25   discussed in *Clark* states that "issues resolved on appeal will not be reconsidered on habeas corpus,

26   and . . . the writ will not lie where the claimed errors could have been, but were not, raised upon a

27

28

timely appeal from a judgment of conviction." *Clark*, 5 Cal. 4th at 765.[4]  "Without this usual

limitation on the use of the writ, judgments of conviction of crime would have only a semblance of

finality." *Id.* at 765-66.

These procedural rules referenced in *Clark* have been found to be adequate and independent

state procedural grounds, the invocation of which bars federal habeas review of the claim in

question.  *See, e.g.*, *Walker*, 131 S.Ct. at 1125, 1128-29; *Ashford v. Beard*, No. 2:11-cv-01423-JKS,

2014 WL 2876758, at *6 (E.D. Cal. June 24, 2014) ("The Ninth Circuit has held that California's

'substantial delay' timeliness standard satisfied the 'independent and adequate' requirement.");

*Barnett v. Knowles*, No. C-08-1604-RMW, 2013 WL 3815642, at *2 (N.D. Cal. July 22, 2013)

("California's 'substantial delay' timeliness standard satisfies the 'independent and adequate'

requirement.").

In its prior order denying Respondent's motion to dismiss the petition, the Court construed

the Superior Court's citation to *Clark as* "address[ing] the timeliness of Petitioner's particular claim

of ineffective assistance of counsel on direct appeal, not the timeliness of the petition itself."  *Grecu*

*v. Evans*, 2012 WL 4643871, at *5.  Thus, this Court concluded that Superior Court had applied the

second *Clark* procedural rule and found that Petitioner had "fail[ed] to timely appeal Petitioner's

ineffective assistance of counsel claim."  *Id.*  This construction of the Superior Court's order – were

it to stand – would be fatal to Respondent's procedural bar argument.  The California Supreme Court

has held that the procedural rule prohibiting a habeas petitioner from raising claims that were not

raised on direct appeal (more commonly referred to as the *Dixon* bar) does not apply to ineffective

assistance of counsel claims.  Specifically, in *In re Robbins*, 18 Cal. 4th 770 (1998), the Supreme

Court stated:

> We apply the bars of *In re Dixon* and *In re Waltreus* whenever it
> appears that either bar is applicable, with one exception.  We do not
> apply those bars to claims of ineffective assistance of trial counsel,
> even if the habeas corpus claim is based solely upon the appellate
> record.

---

[4] This procedural rule is commonly invoked by California courts with citation to *In re Dixon*, 41 Cal. 2d 756, 759 (1953).

1    *Id.* at 814 n.34.  Accordingly, district courts have refused to find ineffective assistance claims to be

2    procedurally barred for failure to raise on direct appeal under *Dixon*.  *See, e.g.*, *Johnson v. Giurbino*,

3    No. 1:03-cv-06013-LJO-TAG HC, 2007 WL 2481789, at *11 n.2 (E.D. Cal. Aug. 29, 2007).

4           However, in re-reviewing the record in this action and, specifically, the Superior Court's oral

5    ruling, this Court concludes that the Superior Court applied *both* of the procedural rules articulated

6    in *Clark* – including unreasonable delay in presenting state habeas claims, not just the *Dixon* bar.

7    First, the Court notes that it would have been anomalous for the Superior Court (in 2005) to fault

8    Petitioner for failing to raise his ineffective assistance claim on direct appeal when, seven years

9    previously, the California Supreme Court in *Robbins* found such a failure does not bar habeas relief.

10   Second, the Superior Court noted the failure to raise the ineffective assistance claim on direct appeal

11   as only an *example* of the "unreasonable amount of time" that had "passed in this case prior to the

12   petitioner raising his claim."  Petition, Ex. T, at 14.  The Court found an unreasonable time had

13   passed "including" his direct appeal.  *Id.*

14          The Superior Court could reasonably have determined Petitioner unreasonably delayed by

15   failing to raise his ineffective assistance of counsel claim during the five years Petitioner was

16   enjoying the benefits of his plea bargain while on probation.  *Cf. People v. Superior Court*, 210 Cal.

17   App. 3d 1146 (1989) ("[W]e hold that defendant waived the defect in his 1983 [not guilty by reason

18   of insanity] plea by his unexcused delay in challenging that plea until he reaped the full benefit of

19   hospital confinement and avoided the possibility of prison and attendant parole period."); *see also In

20   re Douglas*, 200 Cal. App. 4th 236, 247 (2011) ("[D]ecisional law has expanded the scope of the

21   writ [of habeas corpus] to apply to those in constructive custody situations and today may apply to

22   those on . . . probation . . . .").  Alternatively, the Superior Court could also reasonably have found

23   that Petitioner unreasonably delayed by waiting approximately a year after his 1999 revocation

24   conviction became final to pursue his state habeas petition when Plaintiff had long been aware of all

25   facts necessary to pursue his ineffective assistance claim.  Either way, the Superior Court's finding

26   of unreasonable delay was not "clearly untenable."  *Lopez,* 491 F.3d at 1043.

27          Accordingly, the Superior Court relied on an independent and adequate state law ground in

28   denying Plaintiff's third claim for relief.  On this basis, the Court concludes that Plaintiff's third

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1  claim for relief, alleging that Ms. Hayes provided ineffective assistance of counsel, is procedurally

2  barred.  However, as discussed below, even if there were no procedural bar, Petitioner's third claim

3  of relief nonetheless fails on the merits.

    3.    The State Court's Rejection of Petitioner's Ineffective Assistance Claim Was Not
          Objectively Unreasonable

6       In rejecting Petitioner's third claim of relief on the merits, the Superior Court found that Ms.

7  Hayes was "reasonably effective."  Petition, Ex. T, at 11.  It noted that Petitioner "appeared to have

8  been aware of the fact that the Bothwell burglary may not have been covered in the use agreement"

9  and that Petitioner had taken additional time to "consider the disposition and confer with his

10 attorney."  *Id.* at 12.  Ultimately, it noted that "[i]t is obvious from the record that the decision to

11 enter plea [sic] or not was a thoughtful decision . . . based on a tactical decision to avoid a state

12 prison commitment."  *Id.*

13      However, Petitioner claims that the state court erred because Ms. Hayes failed to conduct

14 any investigation into whether the Bothwell burglary had been previously disclosed to law

15 enforcement authorities.  He further contends that had such an investigation been done, Ms. Hayes

16 would have discovered that law enforcement had no evidence tying Petitioner to the Bothwell

17 burglary independent of information he had given during his immunity proffer.  He also argues he is

18 entitled to an evidentiary hearing on the question of what, precisely, Petitioner told law enforcement

19 regarding the Bothwell burglary.

20      The Court begins with Petitioner's request for an evidentiary hearing.  A district court's

21 ability to conduct an evidentiary hearing was severely cabined by the Supreme Court's decision in

22 *Cullen v. Pinholster*, 131 S. Ct. 1388 (2011).  *See, e.g.*, *Hill v. Sheldon*, No. 1:11CV2603, 2014 WL

23 700024, at *19 (N.D. Ohio Feb. 21, 2014) (noting that *Pinholster* "greatly limits the circumstances

24 where any federal evidentiary hearing would be warranted"); *Quezada v. Scribner*, No. C04-7532-

25 RSWL (MLG), 2011 WL 3652245 (C.D. Cal. Aug. 19, 2011) ("*Pinholster*'s limitation on

26 evidentiary hearings has consequences for discovery in habeas cases.").  In *Pinholster*, the Court

27 held that "review under  § 2254(d)(1) is limited to the record that was before the state court that

28 adjudicated the claim on the merits."  *Pinholster*, 131 S. Ct. at 1398.  The Court noted that it would

United States District Court

For the Northern District of California

1   "be strange to ask federal courts to analyze whether a state court's adjudication resulted in a decision

2   that unreasonably applied federal law to facts not before the state court." *Id.* at 1399.[5]  Accordingly,

3   after *Pinholster*,

> for claims that were adjudicated on the merits in the state court,
> petitioners can rely only on the record before the state court in order to
> satisfy the requirements of § 2254(d).  This effectively precludes
> federal evidentiary hearings for such claims because the evidence
> adduced during habeas proceedings in federal court could not be
> considered in evaluating whether the claim meets the requirements of
> § 2254(d).

8   *Gulbrandson v. Ryan*, 738 F.3d 976, 993-94 (9th Cir. 2014) (citation omitted); *see also Martin v.*

9   *Allison*, No. 2:11-cv-0870 LKK GGH (HC), 2014 WL 3058442 (E.D. Cal. July 3, 2014)

10  ("[E]videntiary hearings are not granted unless it can be determined from the existing record that the

11  California courts acted AEDPA unreasonably in arriving at the determination on a legal or mixed

12  fact/legal issue . . . .").

13          An evidentiary hearing may be appropriate after *Pinholster* only if the district court first

14  determines that the state court made an unreasonable application of federal law or made an

15  unreasonable determination of facts based on the record before it.  *If* the state court did this (that is,

16  if the state court's decision fails AEDPA's deferential standard of review), an evidentiary hearing

17  may be conducted to determine whether Petitioner has demonstrated a constitutional violation

18  (without giving any deference at that point to the state court decision).  *See Pinholster*, 131 S.Ct. at

19  1411 n. 20 ("Because Pinholster has failed to demonstrate that the adjudication of his claim based on

20  the state-court record resulted in a decision 'contrary to' or 'involv[ing] an unreasonable

21  application' of federal law, a writ of habeas corpus 'shall not be granted' and our analysis is at an

22  end." (quoting 28 U.S.C. § 2254(d))).  There may be an exception to *Pinholster* where the state court

23  did not reject Petitioner's claims on the merits, but instead relied upon a state procedural bar that is

24  either not independent or adequate or otherwise was excused.  *See, e.g.*, *Quezada v. Scribner*, No.

25  CV 04-7532-RSWL (MLG), 2011 WL 3652245 (C.D. Cal. Aug. 19, 2011) ("[I]f [petitioner] can

---

27          [5] Similarly, by its express terms, review under  § 2254(d)(2) is also limited to the record
before the state court.  *See* 28 U.S.C. § 2254(d)(2) (state court decision reviewed to determine if it
28  was "based on an unreasonable determination of the facts in light of the evidence presented in the
State court proceeding").

show cause and prejudice for the procedural default, *Pinholster* would not be applicable to this petition because the *Brady* claim was not addressed on the merits by the state courts.").  But where, as here, the state court reached the merits, *Pinholster* does not permit an evidentiary hearing absent the showing discussed above.  *See Gulbrandson,* 738 F.3d at 993 ("Thus, for claims that were adjudicated on the merits in state court, petitioners can rely only on the record before the state court in order to satisfy the requirements of  § 2254(d).").

For the reasons stated below, Petitioner is not entitled to an evidentiary hearing insofar as the state court's determination that Ms. Hayes provided reasonably effective representation (and that the decision to plead guilty was the result of an informed tactical decision) was not objectively unreasonable.

The Court has already discussed above the *Strickland* standard that governs this ineffective assistance inquiry.  Plaintiffs third claim for relief, however, arises in the context of a plea agreement.  The Supreme Court has noted that:

> Plea bargains are the result of complex negotiations suffused with uncertainty, and defense attorneys must make careful strategic choices in balancing opportunities and risks.  The opportunities, of course, include pleading to a lesser charge and obtaining a lesser sentence, as compared with what might be the outcome not only at trial but also from a later plea offer if the case grows stronger and prosecutors find stiffened resolve.  A risk, in addition to the obvious one of losing the chance for a defense verdict, is that an early plea bargain might come before the prosecution finds its case is getting weaker, not stronger.  The State's case can begin to fall apart as stories change, witnesses become unavailable, and new suspects are identified.

*Premo v. Moore*, 131 S.Ct. 733, 741 (2011).  Because of this, "strict adherence to the *Strickland* standard [is] all the more essential when reviewing the choices an attorney made at the plea bargain stage." *Id.*  Failure to provide proper deference to counsel's determinations at this stage risks the "potential for the distortions and imbalance that can inhere in a hindsight perspective." *Id.* Because the information available to counsel at the pretrial stage is limited, "[i]n determining how searching and exacting their review must be, habeas courts must respect their limited role in determining whether there was manifest deficiency in light of information then available to counsel." *Id.*

**United States District Court**
For the Northern District of California

1    Petitioner contends that Ms. Hayes' conduct prior to the plea agreement was deficient insofar

2    as she failed to investigate the scope of his use immunity agreement.  Specifically, he contends that

3    issue raised in his third claim for relief is "*not* the reasonableness of Ms. Hayes' tactical decision not

4    to challenge the Bothwell burglary charge . . . .  Rather, it is whether Ms. Hayes' apparent failure to

5    investigate adequately the circumstances under which the Santa Cruz County law enforcement

6    authorities learned of Petitioner's involvement in the Bothwell burglary . . . was itself reasonable."

7    Traverse at 26.  Petitioner relies primarily on *Wiggins v. Smith*, 539 U.S. 510 (2003), where the

8    Court reiterated that the deference owed to counsel's strategic judgments depended on the

9    "adequacy of the investigations supporting those judgments." *Id.* at 521.  Thus, "'[s]trategic choices

10   made after thorough investigation of law and facts relevant to plausible options are virtually

11   unchallengeable; and strategic choices made after less than complete investigation are reasonable

12   precisely to the extent that reasonable professional judgments support the limitations on

13   investigations.'" *Id.* at 521 (quoting *Strickland*, 466 U.S. at 688).  However, even counsel's decision

14   *not* to investigate "'must be directly assessed for reasonableness in all the circumstances, applying a

15   heavy measure of deference to counsel's judgments.'" *Id.* at 521-22 (quoting *Strickland*, 466 U.S. at

16   690-91).  This is ultimately a context-dependent consideration of the challenged conduct "'as seen

17   from counsel's perspective at the time.'" *Id.* at 523 (quoting *Strickland*, 466 U.S. at 689).

18           a.   <u>The State Court's Determination that Ms. Hayes Provided Reasonably</u>

19                      <u>Effective Counsel Was Not Objectively Unreasonable</u>

20   The state court's determination that Ms. Hayes was reasonably effective was not contrary to,

21   or an unreasonable application of, federal law.  Nor was it an based on an unreasonable

22   determination of the facts in light of the record before the state court.  *See Gonzalez v. Adams*, No.

23   CV 09-586-DSF (SP), 2012 WL 1032977 (C.D. Cal. Mar. 8, 2012) ("[T]he state court's finding that

24   trial counsel's performance fell within the range of reasonable professional assistance is not an

25   unreasonable application of clearly established federal law or an unreasonable determination of the

26   facts.").

27   Petitioner asserts that Ms. Hayes "simply accepted Christine McGuire's assertion that the

28   Bothwell burglary had not been disclosed by Petitioner." Traverse at 26.  However, the record

United States District Court

For the Northern District of California

1    demonstrates that Ms. Hayes was present during his December immunity proffer with the Santa

2    Cruz authorities.  *See* Petition Ex. B, at 17 (transcript of December immunity proffer with Ms. Hayes

3    providing Petitioner guidance regarding the scope of the immunity agreement).  Further, Ms. Hayes

4    in her declaration speaks of accompanying Petitioner and law enforcement officials over a three day

5    span in December as he spoke of various crimes in which he had been involved.  Petition, Ex. Q, at

6    3.  Accordingly, it appears that Ms. Hayes had knowledge of what Petitioner had disclosed as part of

7    his immunity agreement with Santa Cruz officials in December.  Significantly, Petitioner's second

8    traverse before the Superior Court, drafted by an attorney, concedes that the transcript of the

9    December proffer contained "no direct mention of the residential burglary committed at the

10   Bothwell residence."  Lodged Exhibits, Ex. 10, at 4.[6]  Accordingly, the record demonstrates that Ms.

11   Hayes did not simply "accept" the prosecutor's assertion that the Bothwell burglary had not been

12   disclosed, but rather had first hand knowledge of the nature and detail of Petitioner's December

13   proffer – a proffer that Petitioner conceded contained "no direct mention" of the Bothwell residence.

14        Petitioner asserts, however, that he disclosed the Bothwell robbery to Santa Cruz authorities

15   during a *November* proffer when his previous attorney, Mr. Kraft, had negotiated a verbal use

16   immunity agreement.  *See* Petition, Grecu Decl. ¶ 38 ("The Bothwell burglary I had fully disclosed

17   to Santa Cruz authorities on November 22 & 25, and again on December 9 &10 . . . .").  However,

18   Petitioner's attempt to base his ineffective assistance claim on Ms. Hayes' failure to investigate

19   whether Petitioner had disclosed the Bothwell burglary in November is problematic.  To begin,

20   Petitioner failed to establish a clear record to support this claim.  What can be said with confidence

21   is that on November 22, 1991, Petitioner was accompanied by Santa Cruz County law enforcement

22   on a "drive around" after Petitioner had begun disclosing Santa Cruz crimes to Santa Clara

23   authorities as part of his agreement with Santa Clara County.  It is also evident that he was told

24   during this drive that his agreement with Santa Clara "was not binding with the Santa Cruz Sheriff's

25   Office and that anything he told to us would be in the form of a proffer."  Petitioner was further told

26

27        [6] To the extent that Petitioner has asserted that the transcript of the December immunity
     proffer has unexplained gaps in pages, the record reveals no objection by Petitioner, or his counsel,
28   to the completeness of the transcript before the Santa Cruz County Superior Court.

United States District Court

For the Northern District of California

that anything he told law enforcement that day "would not be used against him because he was represented by an attorney."  It is also clear that Petitioner *now* contends that three days later, a verbal immunity agreement was entered into with Santa Cruz County and he spent "numerous hours reciting all of the cases I had previously disclosed to Santa Cruz investigators on November 22, 1991."  *Id.*

Petitioner's current account, however, is inconsistent with what was placed before the Superior Court.  In his initial declaration in support of his state habeas petition, Petitioner spoke of a single immunity proffer (without differentiating his alleged November proffer and his December proffer).  He did not state that this proffer occurred during a "drive along" with law enforcement, but rather was "made during a tape-recorded conversation" in which he spent "numerous hours over several days cataloging the crimes [he] knew about."  Lodged Exhibits, Ex. 6, Grecu Decl. ¶ 9.  Petitioner claimed in this declaration that it was *after* his formal immunity proffer that he accompanied law enforcement officers and showed them various crime scenes.  *Id.* ¶ 10.   Further, the record suggests that in his state court petition, Petitioner was referencing the December proffer.  In his declaration in support of this petition, Petitioner, referencing an attached exhibit, states that "Santa Cruz authorities later produced a transcript of these tapes which is several hundred pages long."  *Id.*  This is significant because the only transcripts which appear in the state court record are of the *December 9* proffer.  Further, Petitioner has stated in his declaration before *this* Court that he has never received the tapes or a transcript of the November 25 immunity agreement and proffer.  Grecu Decl. ¶ 15.  Accordingly, insofar as the Superior Court petition refers to a single immunity proffer for which hundreds of pages of transcripts were produced, it must have been referring to the December proffer.

It was not until Petitioner filed his *pro se* "Denial and Exception to the Return" that he asserted that a formal immunity proffer was made with Santa Cruz authorities in November.  Lodged Exhibits, Ex. 9, at 2-3.  Ultimately, however, in the Traverse to Return to Writ of Habeas Corpus that Petitioner filed (through counsel), there are no references to a November proffer of any kind.  Instead, the only reference Petitioner giving a proffer are the following paragraphs:

United States District Court

For the Northern District of California

10.     On December 9 and 10, 1991, petitioner gave the authorities, including authorities from the Santa Cruz County Sheriff's Office, a lengthy statement of armed residential robberies and residential burglaries occurring in Santa Clara, Monterey and Santa Cruz Counties from 1987 to 1991.  This statement included approximately six armed residential robberies; and nine residential burglaries, occurring in Santa Cruz County.  The individuals perpetrating those crimes, according to petitioner, were, among other individuals, petitioner himself, David Ianniciello, Robert Ianniciello, John Hyman, Joe Hyman, and Ronald Santa Cruz. . . .

11.     With regard to the statements petitioner provided to the authorities on December 9 and 10, 1991, petitioner received use immunity as reflected in a transcribed statement . . . .

*Id.* at 3.  Further, as quoted above, Petitioner, through his attorney, conceded that there was "no direct mention of the residential burglary committed at the Bothwell residence" during the December 9 and 10 proffer.  Id.

As the above account indicates, Petitioner failed to place into the Superior Court record any clear account of when he made his formal immunity proffer, let alone what was contained in that proffer.  In opposition to Petitioner's apparently fluid account, the record contains a number of references to the December proffer being the formal proffer on which the use immunity agreement was predicated.  For example, Petitioner placed into the state court record (as Exhibit 12 to his Denial and Exception to Return), a report by Detective Len Lofano of the Santa Cruz Sheriff's Office which included the following account of the post-November 22 events:

During the following week [after the November 22 drive] I put D.A. McGuire in touch with [Petitioner's] Attorney.  They agreed to meet in Santa Cruz, along with [Petitioner], and strike a "proffer agreement."  The parties met but [Petitioner's] attorney was not prepared at the time to strike an agreement.  All parties involved met at the Santa Clara DAO at a later date but were informed by [Petitioner's] attorney that he had a conflict in the case and had to bow out as [Petitioner's] attorney.

On 12-9-91 McGuire, Bradley, Santa Clara D.A., Sgt. Keech, myself, and [Petitioner's] new Attorney, Public Defender Lindy Hayes, met and discussed the situation.  Hayes agreed to [Petitioner] making a proffer.  McGuire made the proffer statement on tape . . . which Hayes agreed to.

Similarly, Ms. Hayes' stated that she when she was first retained (in December), she was informed that "David Grecu was talking about crimes outside of the Santa Clara County jurisdiction, that

United States District Court

For the Northern District of California

1    Santa Clara could not bind other jurisdictions by their sentencing agreement on a single felony case,

2    and that the police would like to find out just what he was talking about before they would commit

3    themselves to any firm agreement."  Petition, Ex. Q, at 1.  In a subsequent meeting, she stated that

4    Santa Cruz authorities informed Petitioner that he would have "use immunity for anything that he

5    admitted to" and "would not go to prison for anything that he told them about, but that they could

6    prosecute him for anything that they found about independently."  *Id.* at 2.  She asserts that David

7    "said he understood, and talked non-stop for the next three days."  *Id.*

8            In summary, Petitioner failed to clearly articulate before the state court that a formal

9    immunity proffer occurred in November 1991, prior to the retention of Ms. Hayes.  Rather, the

10   record reflects that the only consistent references to an immunity proffer in the Superior Court

11   record are to the December proffer.  Petitioner's assertion of a November immunity agreement is not

12   corroborated by any documents or evidence, and as noted above, his own description of the alleged

13   agreement lacks any detail as to who offered the immunity and its scope and terms.  Given

14   Petitioner's failure to establish a record on this point, the Superior Court could have reasonably

15   concluded that Ms. Hayes did not render ineffective assistance for failing to investigate whether

16   Petitioner had previously disclosed the Bothwell prior to her retention; there may have been nothing

17   to investigate.

18           Further, even if it is assumed that an immunity proffer occurred in November, there is

19   nothing in the state court record indicating that Petitioner *expressly told* Ms. Hayes that he disclosed

20   the Bothwell robbery during a proffer in November.  Rather, his declaration attached to the state

21   habeas petition states that he initially refused to plead because he had "complete immunity under the

22   agreement."  *Id.* ¶ 19.  Petitioner's general protestation of "complete immunity," however, is quite

23   different from him advising his counsel of when and in what circumstances he was claiming to have

24   disclosed the burglary. *Cf. Jimenez v. Walker*, No. C08-05489 YGR (PR), 2014 WL 4051124, at *22

25   (N.D. Cal. Sept. 13, 2012) ("The failure to investigate a defense may  not be ineffective assistance

26   where it was due to the defendant's failure to inform the attorney of relevant facts.").  Petitioner's

27   apparent failure to provide Ms. Hayes with such information is particularly glaring given that the

28   record before the state court revealed that Ms. Hayes had sat through Petitioner's lengthy proffer in

33

United States District Court

For the Northern District of California

1    December.  As Petitioner had every incentive to fully disclose in December what he had allegedly

2    disclosed in November, his silence would not have led Ms. Hayes to believe there had been an

3    earlier immunity proffer which differed in a material way from the December immunity.

4            Finally, even if Ms. Hayes had reason to believe there had been an earlier proffer protected

5    by an immunity agreement, the record provides a reasonable basis for the Superior Court to have

6    concluded that any failure to fully investigate whether Petitioner had disclosed the Bothwell robbery

7    was the result of a tactical decision that did not fall below the *Strickland* standard.  First, Ms. Hayes

8    indicated in her declaration before the Superior Court that at the time the Santa Cruz County District

9    Attorney filed its charges, there was a "very real problem of the police finding independent means"

10   to prosecute other crimes that Petitioner had referenced in his use proffer.  She provided the

11   following example:

12              In Monterey, for example, there was a residential robbery which David
             had told the police about.  The homeowner had been beaten while tied
13              up in front of his two small children.  The crime had gone unsolved at
             the time, but the police had recovered a footprint outside one of the
14              windows which turned out coincidentally to match David's shoe.  The
             police were in the process of preparing photo lineups to show to the
15              homeowner when the Chief Assistant DA of Monterey County, a
             former classmate of mine, agreed to halt investigation in return for
16              David's cooperation with Santa Cruz.  I wondered just how far the use
             immunity would protect David – If the homeowner did recognize
17              photos, would that be the fruit of the poisoned tree or would it be
             sufficiently independent to stand on its own as evidence?

18

19   *Id.* at 4.  The record reveals Ms. Hayes had a justifiable concern whether law enforcement eventually

20   would be able to tie Petitioner to his crimes independent the use immunity.  Second, Petitioner

21   admits to being extremely motivated to avoid a prison term out of a fear for his safety, and Ms.

22   Hayes was well aware of his fear.  *See* Lodged Exhibits, Ex. 6, at 5-6 ("[Ms. Hayes] told me to

23   cooperate and go along with a new deal because otherwise I would end up in prison with the people

24   I had turned in.  I was very frightened about that prospect because Sgt. Bradley had said the

25   Ianniciello family had a $100,000 contract on my life."); Petition, Grecu Decl. ¶ 47 ("I only plead

26   guilty because Ms. Hayes said that my past agreement was worthless.  I was under a very real death

27   threat; I had no other option to avoid being put in a lethal situation.").  Indeed, Ms. Hayes refers to

28

34

United States District Court

For the Northern District of California

1   Petitioner as being "frantic about not going to prison" once the charges were brought against him

2   because of the "danger to him in custody."  Petition, Ex. Q, at 3.

3          Courts have recognized that the failure to conduct further investigations into a given defense

4   or claim is not *per se* ineffective assistance.  Rather, as the *Wiggins* court itself recognized, the

5   critical inquiry is whether the decision not to investigate was the result of "reasonable professional

6   judgments."  *Wiggins*, 539 U.S. at 521.  *See, e.g.*, *Torres v. Prosper*, No. CIV S-07-1689 LKK CHS

7   P, 2010 WL 1338145, at *27 (E.D. Cal. Apr. 2, 2010) ("Faced with what appeared to be a very

8   strong case for the State, combined with the potential that Torres could incur a sentence in excess of

9   30 years with multiple strikes if found guilty at trial, White's decision to forego additional

10  investigation in favor of pursuing a global plea agreement acceptable to his client was perfectly

11  reasonable and fell within the wide range of professional assistance available."); *United States v.*

12  *West*, 312 F. Supp. 2d 605, 612 (D. Del. 2004) (finding decision to forgo further investigation and to

13  advise client to plead guilty was reasonable given the strength of the government's case and the fact

14  that sentencing reduction defendant would receive by pleading guilty).  In light of the risk that law

15  enforcement would be able to tie Petitioner to additional crimes independent of the immunity proffer

16  and Petitioner's fear of prison, the state court's determination that Ms. Hayes provided reasonably

17  effective counsel in advising Petitioner to accept a plea that allowed him to avoid prison time was

18  not objectively unreasonable.

19              b.   The State Court Could Reasonably Have Found that Petitioner Suffered No

20                   Prejudice

21          Additionally, even if Petitioner had established that the state court's determination as to Ms.

22  Hayes' effectiveness was objectively unreasonable, his claim for relief would still fail as he has not

23  demonstrated prejudice.  In guilty plea cases, the *Strickland* prejudice standard is slightly modified

24  and requires Petitioner to show a "'reasonable probability that, but for counsel's errors, he would not

25  have pleaded guilty and would have insisted on going to trial.'"  *Premo*, 131 S. Ct. at 745 (quoting

26  *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).  Here, if Ms. Hayes had conducted the thorough

27  investigation Petitioner claims she was constitutionally required to perform and found the evidence

28  that he contends demonstrates that the Bothwell burglary was covered by the use immunity

United States District Court

For the Northern District of California

1    agreement, he would have had, at most, an argument that the burglary count should be dismissed.  It

2    is unclear whether such an argument would have been successful.

3        Specifically, the Superior Court could reasonably have concluded that there was independent

4    evidence upon which the district attorney would have relied in pressing the Bothwell burglary

5    charge against Petitioner.  For example, on January 3, 1992, Henry Hyman, the father of one of

6    Petitioner's criminal associates, contacted the district attorneys' office and requested that the police

7    come and search his home for any stolen firearms or property that their son may have been keeping

8    at the house so that he could "clear his conscience."  Petition, Ex. M (Docket No. 1-14), at 4.  Mr.

9    Hyman told the searching officers that his son and his son's friend Dave – the Petitioner – frequently

10   came by the house and had left a number of guns there.  One of the guns that was located on the

11   premises was a pistol that had been stolen from the Bothwell home.  *Id.* at 4-5.  Accordingly, law

12   enforcement had a way to connect Petitioner to a stolen firearm from the Bothwell residence.

13       Petitioner responds that this is "fruit" of Petitioner's proffer because during this proffer, he

14   went into length about how he would hide stolen property at his friend's house.  Traverse at 22.

15   Thus, he claims, "[a]cting on Petitioner's statements, they sooner or later would have served a

16   search warrant on the Hymans' house, and they would have recovered the pistol."  *Id.* at 24.  That

17   law enforcement *could* have eventually located the pistol based on Petitioner's statements does not

18   change the fact that Mr. Hyman contacted law enforcement on his own volition and provided law

19   enforcement with an independent path to that pistol – and a means to tie Petitioner to the burglary.

20       In addition, as a result of locating this pistol and the information provided by Mr. Hyman,

21   law enforcement re-interviewed a witness who further connected Petitioner to the crime.  The

22   witness was a police officer who had detained an individual near the Bothwell residence while

23   responding to the robbery call.  Petition, Ex. M, at 6.  The individual informed the officer that his

24   name was Patrick David Thompson and was dressed in a camouflage field jacket.  *Id.*[7]  The officer

25   _____

26       [7] The party who had reported the Bothwell robbery and got a glimpse of the robber initially
     told law enforcement that the robber was wearing a "khaki field jacket," but, when he was re-
27   interviewed following the discovery of the pistol at the Hyman residence, stated that he had "later
     realized it was camoflage [sic]."  *Id.*  During the re-interview of the reporting party, he was shown a
28   photo lineup that included Petitioner's photo in it.  While the reporting party did not identify
     Petitioner's picture, the police report of the interview asserts that the photo that was selected

36

United States District Court

For the Northern District of California

1    patted the individual down and found old coins, a jewelry box, and .30 06 ammunition rounds.  *Id.*

2    The individual gave a plausible explanation for having these items and, given the officer's hurry to

3    arrive at the residence, he let the individual go.  The officer later learned the items had been stolen

4    from the Bothwell robbery.  *Id.*  When this officer was re-interviewed, he was shown a photo lineup

5    that included Petitioner's picture, and the officer "picked out Grecu as the subject he had contacted

6    in the area and time of the burglary."  *Id.* at 5.

7        Petitioner has arguments as to why the identifications by the officer and reporting party are

8    unreliable.  He asserts further arguments as to why Mr. Hymans' call to law enforcement should not

9    be deemed "independent" of his immunity proffer – specifically that (1) Mr. Hyman only called law

10   enforcement because his sons were arrested, which only happened because of Petitioner's testimony

11   and (2) that the searching officers' conduct during the search was influenced by the information they

12   had received during the proffer.  Petition, Grecu Decl. ¶ 29.  The success of these arguments turned

13   on the ability of Petitioner to convince a trial court to make specific credibility determinations and to

14   find that this evidence was, in effect, "fruit of the poisonous" tree (*i.e.*, in violation of the immunity

15   agreement), despite Mr. Hyman's volitional, uncoerced decision to contact law enforcement.  The

16   Superior Court could reasonably have concluded Petitioner's asserted causation was too attenuated.

17       Furthermore, if Petitioner had rejected the plea agreement and instead chosen to defend the

18   Bothwell burglary charge, and had his immunity defense failed, he would have been facing a

19   potentially significant prison term for first degree burglary – a prison term that the record

20   demonstrates he was "frantic" to avoid.  In light of this uncertainty and his desire to avoid prison, it

21   appears highly unlikely that Petitioner would have taken such a gamble – particularly in light of a

22   plea offer and a sentence consisting primarily of probation that the sentencing court reasonably

23   characterized as a "simply a gift."  Lodged Exhibits, Ex. 2, at 511.

24       On these facts, the state court could reasonably have concluded that there was no "reasonable

25   probability" that but for Ms. Hayes' allegedly deficient performance Petitioner's decision to plead

26   guilty would have been different.

27   ───────────────

28   "resemble[d]" Petitioner.  *Id.*

37

c.      Conclusion

As stated above, *Strickland* requires a petitioner alleging ineffective assistance to demonstrate both objectively unreasonable conduct by counsel and prejudice. *See Gulbrandson*, 738 F.3d at 988. The Superior Court's determination that Ms. Hayes provided reasonably effective assistance to Petitioner was not objectively unreasonable. Further, the Superior Court could have reasonably found that petitioner suffered no prejudice for the reasons stated above *See Premo*, 131 S. Ct. at 745 (articulating the prejudice prong in the guilty plea context as whether there was a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial"). For the foregoing reasons, Petitioner's third claim for relief is **DENIED**.

D.      As Plaintiff Concedes, His Fourth Claim for Relief Alleging that his Guilty Plea Was Not Knowing and Voluntary Is Procedurally Barred

Petitioner's final claim for habeas relief is that his guilty plea in the underlying state criminal proceeding was not knowing or voluntary. Petitioner bases this claim on the fact that he "plead guilty only on the advi[c]e of my lawyer and she falsely or mistakenly told me my immunity agreement was worthless and could not prevent the prosecution of the charges." Petition at 6. As already discussed, this claim is related to his claim of ineffective assistance. Further, as discussed above, the state habeas court applied the *Clark*/*Dixon* procedural bar prohibiting raising claims which could have, but were not, brought on direct appeal in habeas proceedings to these claims. Petitioner concedes that he is procedurally barred from proceeding with this claim. *See* Traverse at 28 ("Third, Judge Morse's denial of Claim Four based on an independent state-law ground under *Clark*, while erroneous from Petitioner's point of view, would foreclose federal court review of Claim Four under AEDPA.").

Further, even if the Court were to reach the merit of this claim, the state court's determination that Petitioner's guilty plea was a strategic decision to avoid a prison sentence was not objectively unreasonable. *See, e.g.*, *Hill v. Lockhart*, 474 U.S. 52 (1985) (holding that a "defendant who pleads guilty upon the advice of counsel 'may only attack the voluntary and intelligent

character of the guilty plea by showing that the advice he received from counsel" was not "within the range of competence demanded of attorneys in criminal cases").

### V.    CONCLUSION

Accordingly, Petitioner's fourth claim for relief is **DENIED**.  The Clerk shall enter Judgment in favor of Respondent and close the file in this case.

IT IS SO ORDERED.

Dated:  October 22, 2014

_____
EDWARD M. CHEN
United States District Judge